## COMBINED METALS REDUCTION CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4823. Decided June 11, 1929. (278 P. 1019.)

*Irvine, Skeen & Thurman,* of Salt Lake City, for plaintiffs.

*George P. Parker,* Atty. Gen., and *M. Logan Rich,* Asst. Atty. Gen., for defendants.

ELIAS HANSEN, J.

The Industrial Commission of Utah ordered that the "Combined Metals Reduction Company and/or the United States Fidelity & Guaranty Company pay to Lizzian E. Bentley the sum of $16.00 per week for a period of 311 weeks and one day * * * for the support and maintenance of herself and Margaret Bentley." The Combined Metals Reduction Company and the United States Fidelity & Guaranty Company prosecute this proceeding to review the award. Randall W. Dalton, the son of Lizzina E. Bentley and the half-brother of Margaret Bentley, died on December 5, 1927, as a result of an injury received on November 29, 1927, while he was working in a mine operated by the Combined Metals Reduction Company. At the time Dalton was injured the Combined Metals Reduction Company was an employer subject to the Workmen's Compensation Law of this state. The United States Fidelity & Guaranty Company was the insurance carrier of the Combined Metals Reduction Company. Lizzina E. Bentley and Margaret Bentley claim that they were wholly dependent for their support upon the deceased at the time of his injury and death. The Combined Metals Reduction Company and the United States Fidelity & Guaranty Company deny the dependency. The only issues before the commission and the only questions here presented for review are: (1) Were the mother and half-sister of the deceased dependent upon him for support at the time he received the injury which caused his death? (2) If dependency existed, what amount of compensation should be awarded? There is no substantial conflict in the evidence taken before the commission. The following facts affecting the issues of dependency and

the extent thereof may be said to be established by the evidence: Randall W. Dalton was 44 years of age at the time of his injury and death. He was not and had not been married, but he was engaged to be married when he was fatally injured. Lizzina E. Bentley, the mother of the deceased, was 62 years of age and in poor health. The only property she owned was a small cabin at Parowan, Iron county, Utah. She resided there with her second husband, Charles Bentley, whom she married about two years after the death of her first husband. Margaret Bentley is the issue of the marriage of Charles Bentley and Lizzina E. Bentley. Margaret resides and has resided with her parents since her birth. The record does not disclose the number of children that were born to Mrs. Bentley, but it does appear that she has children other than Randall and Margaret. Mrs. Bentley testified that her other children were married and unable to render her any financial assistance. At the time of the hearing before the commission, Margaret Bentley was 22 years of age. On July 27, 1928, Dr. M. J. Macfarlane, at the request of the commission, examined Margaret and reported to the commission the result of such examination. By agreement of the parties to this proceeding the report of Dr. Macfarlane was admitted in evidence. We quote the following from the report:

"The child (Margaret) did not develop mentally and she soon showed signs that indicated very defective vision. As she grew older, several physicians were consulted who referred her to Dr. L. W. Snow at Salt Lake City and Dr. Stookey. The latter operated on her several times for cataracts, but after the cataracts were removed I glean that he discovered a condition in the rear of the eye and told the parents her vision would never improve.

"Since this time, they have gone the limit, as usual, consulting all the various cults and spending what money they had in an effort to do her some good, but all of no avail.

"Upon examination this morning, the girl showed marked mental weakness. Her hearing and station are apparently normal. Her general reflexes weak, chest and abdomen negative except for a soft murmur over the heart indicating a mitral insufficiency. * * *

"Examination of her eyes reveals a marked nystagmus and internal strabismus, very sluggish reflexes in the right eye and some fragments of cataracts are discernible in the left. The mother thinks she can distinguish light from darkness but the girl could not distinguish fingers at any distance. Except for a rather bad condition of the gums there was nothing else of importance discernible.

"It is apparent, therefore, that the girl is absolutely incapacitated—and will always require support and care."

The deceased contributed about $1,000 to help defray the medical treatment given Margaret. The first money contributed for that purpose was when Margaret was about three years of age and the last in 1917. From 1902 to 1909 the deceased annually sent his mother sufficient money to pay the taxes on the farm which she then owned. The taxes amounted to between $60 and $100 per year. It also appears that other contributions were made to the mother by the son during this period. From 1909 to 1918 the deceased worked on his mother's farm about half of the time and about half of the time he worked in the mines. He contributed to his mother's support, but the amount so contributed is left uncertain. In the spring of 1918 the deceased enlisted for service in the World War. He remained in the service about a year. During that period he did not contribute to his mother's support, but he carried a life insurance policy in the sum of $10,000. His mother was the beneficiary. The deceased was honorably discharged from the army in February, 1919. After his discharge he worked in the mines and herded sheep. The testimony shows that during 1919 and 1920 the deceased contributed to his mother's support, but the amount is left vague and uncertain. In 1921, at the solicitation of two of her sons, Randall and Francis, Mrs. Bentley mortgaged her farm located at Parowan, Utah, for the sum of $6,000. The money secured from the loan was advanced to Randall and Francis to pay on a farm which they purchased at Genola, Utah county, Utah. Mrs. Bentley testified that at the time she advanced the money "Randall promised me fair and

square if they lost out he would take care of me. I says 'now, Randall, now,' I says 'of course Francis is in on this, but he has a family of little children, but if anything should happen that we lost everything, will you stand by mother and see that she is cared for?' He said he would." The purchase price of the Genola farm was $16,000. The money received from the loan secured by the mortgage on Mrs. Bentley's Parowan farm was applied on the purchase price. Later the Parowan farm was sold. The venture of Randall and Francis at Genola resulted in failure. After two years they were compelled to give up the farm because they could not pay the remainder of the purchase price. They sold the live stock that they had on the Genola farm for $1,800 and deposited the money to the credit of Mrs. Bentley. Part of this money was used by Mrs. Bentley to buy the cabin in which she lives. It is not made to appear how much was paid for the home. Francis Dalton testified that when he and Randall left the Genola farm, Randall agreed to care for their mother.

Soon after the deceased vacated the Genola farm, he went to Pioche, Nev., where he remained about three years. While at Pioche he worked in a mine and for a time conducted a cafe. The testimony shows that the deceased made substantial contributions to his mother during the time he was at Pioche. Mrs. Bentley testified that he sent her $100 on two different occasions; that at other times he sent her currency and post office money orders. The first time Mrs. Bentley testified before the commission she estimated that the average amount sent to her by Randall was $10 or $15 per month. When she testified at the second hearing before the commission, she stated that she could not remember the average amount that Randall had sent to her while he was at Pioche. Florence Westerdahl testified that Randall boarded with her while he worked in the mine at Pioche; that she often bought post office money orders at the request of Randall and mailed them to his mother; that upon one occasion she remembered he sent her $40;

that at one time she remembered he sent only $10, but this was when he had two pay days a month; that she did not recall that Randall ever missed a month when he did not send his mother money; that "he always remembered his mother and would say this is his mother's pay day." These payments were kept up during the two years he boarded with Mrs. Westerdahl. Francis Dalton testified that Ranrall contributed about $30 per month to the support of his mother while he was at Pioche. This testimony was hearsay.

Randall left Pioche in June, 1926. After he left Pioche his contributions to his mother ceased, except upon a few occasions when it appears he gave her $10 or $15. After leaving Pioche he tried salesmanship for some time, but apparently without much success. He then took a mining lease, which likewise proved unprofitable. Just before he was fatally injured he began working under a contract whereby he was to be paid on a footage basis. The record does not disclose the amount that he was earning when he was fatally injured, but counsel for the Combined Metals Reduction Company and the United States Fidelity & Guaranty Company stated at the hearing before the commission that it was admitted that if dependency was shown the deceased was earning sufficient at the time of his injury to support an award for the maximum amount allowed under the Workmen's Compensation Act. It further appears that at various times before his death the deceased stated that he intended to provide for his mother. When he and his fiancee were planning on getting married, he stated that he must arrange to take care of his mother.

Charles Bentley, the husband of Lizzina E. Bentley, was 67 years of age at the time of the first hearing before the commission, which was on June 7, 1928. At that time he did not own any property. He had herded sheep and goats when he was able to work. During the last 8 or 10 years he was not able to do heavy work, but did light work in the garden.

It is upon substantially the foregoing facts and testimony that the Industrial Commission based its award of compensation in the sum of $16 per week for 311 weeks and 1 day and ordered the same to be paid to Lizzina E. Bentley for the use and benefit of herself and her daughter Margaret.

In order that Lizzina E. Bentley and Margaret Bentley may recover compensation for the death of Randall W. Dalton, it must be made to appear as a fact that they were dependent upon him at the time he was fatally injured. Laws Utah 1921, § 3140, subd. 5(d), p. 177, so far as material here, reads thus:

"In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless a member of the family of the deceased employee, or bears to him the relation of husband or widow, lineal descendant, ancestor, or brother or sister. * * * Half brothers and sisters shall be included in the words 'brother or sister' above used."

We are of the opinion that the facts established by the evidence in this case support a finding that Lizzina E. Bentley and Margaret Bentley were at least partly dependent upon Randall W. Dalton at the time he was fatally injured. In our Workmen's Compensation Act, Laws Utah 1921, chap. 67, § 3140, subd. 3, p. 177, it is provided:

"If there are partly dependent persons at the time of the death, the payment shall be 60 per cent. of the average weekly wages, but not to exceed the maximum of $16 per week, and to continue for all or such portion of the period of six years after the date of injury, as the commission in each case may determine, and not to amount to more than a maximum of $5,000, provided that the benefits provided for in this subsection shall be in keeping with the circumstances and conditions of dependency existing at the date of injury, and any amount awarded by the commission under this section must be consistent with the general provisions of this act."

The award of compensation in the instant case is thus within but nearly equal to the maximum allowed by law for

partial dependency. This court has heretofore announced the general rule that should form the basis for fixing the amount of compensation to be awarded in a given case. *Ogden City* v. *Industrial Commission,* 57 Utah 221, 193 P. 857; *Utah Fuel Co.* v. *Industrial Commission,* 67 Utah 25, 245 P. 381, 45 A. L. R. 882; *John Scowcroft & Sons Co.* v. *Industrial Commission* (Utah) 258 P. 339. It is there, in effect, held that compensation should be founded upon the probable financial loss suffered by the dependents on account of the death of the decedent. In this case the dependency of Mrs. Bentley was apparently brought about in great part by the deceased and his brother Francis. It was they who were responsible for the loss of her farm located at Parowan. The evidence shows that the deceased was ever mindful of his moral, if not his legal, obligation to care for his mother and helpless half-sister. When he was able he contributed rather liberally to their immediate needs. When he planned for the future their support and maintenance was his special concern. That his mother and half-sister were in dire need of his assistance is obvious. It may be said that the award granted by the commission was very liberal if based solely upon what the deceased had contributed to his mother and half-sister at the time of his death. However, under the facts and circumstances disclosed by the evidence, the commission would have been justified in finding that the deceased, had he lived, would have contributed more if the necessities of his mother and half-sister required it. The commission had the right and it was its duty to consider all of the "circumstances and conditions of dependency existing at the date of injury." Dependency and the extent thereof are questions of fact to be determined primarily by the Industrial Commission. The power of this court to review an award made by the Industrial Commission "shall not be extended further than to determine whether or not: 1. The commission acted without or in excess of its powers. 2. If findings of fact are made, whether or not such findings of fact support the

award under review." Laws Utah 1921, c. 67, § 3148, subd. b. p. 181. In this case it cannot be said that the commission acted without or in excess of its power in making the award complained of. Nor can it be said that the award is not supported by substantial competent evidence. The findings of fact made by the commission support the award.

THE AWARD IS AFFIRMED.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.