## UTAH FUEL CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4193. Decided November 13, 1924. (230 Pac. 681.)

1. MASTER AND SERVANT—ESSENTIALS OF FAMILY RELATIONSHIP, RELATIVE TO DEPENDENCY WITHIN COMPENSATION LAW, STATED; "MEMBER OF FAMILY." Relative to being "a member of the family" of deceased employé, within Comp. Laws 1917, § 3140, subd. 5, as amended by Laws 1921, c. 67, necessary to being a dependent, entitled to compensation, family relationship is a social status, not necessarily founded on contract; and persons may, without blood relationship, be members of same family; but there must be some legal or moral obligation for support existing between the individuals composing the family.

2. MASTER AND SERVANT—FINDING CHILD OF DECEDENT'S MISTRESS WAS MEMBER OF HIS FAMILY WITHIN COMPENSATION LAW SUPPORTED BY EVIDENCE. Testimony held to support Commission's finding that a boy, who for six years, while his mother was living in adultery with deceased, lived with them, in deceased's household, was a member of his family, within Compensation Law.

See 25 C. J. pp. 665, 669; Workmen's Compensation Acts, §§ 49, 114.

Original proceeding by the Utah Fuel Company against the Industrial Commission of Utah and John Willis, by Cora Willis, his mother, to review an award under the Workmen's Compensation Law.

AWARD AFFIRMED.

*Ray & Rawlins* and *Ferdinand Erickson,* all of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

GIDEON, J.

This is a proceeding to review an award made by the Industrial Commission in favor of John Willis, a boy ten years of age. The facts are not in dispute. Ed. Willis was killed in an accident on March 8, 1924, while employed by the Utah Fuel Company. Dependency in fact is not controverted.

Cora Willis, the mother of the infant, and the deceased had been living together ostensibly as husband and wife for more than six years prior to the date of the accident. They were not married. During all of the time it is without question that the mother had a husband living from whom she had not been divorced, and the deceased had a wife living from whom he had not been divorced. Cora Willis

was married in the state of Missouri to a man by the name
of Johnson. He was convicted of some offense and sent to
prison. Thereafter she came to the town of Sego in this
state, and there met the deceased, who was then living apart
from his wife. At that time the two established a house-
hold. The woman kept the home and the deceased sup-
ported both the mother and child. More than six years
prior to the accident they removed from that place to Castle-
gate, where the deceased met his death by accident while in
the employ of the fuel company. During all the years they
resided at Castlegate the deceased maintained a place of resi-
dence, introduced Mrs. Johnson as his wife; and they were
known and reputed in the community to be man and wife.
During that time the deceased supported the child as well
as his mother, gave the boy his name, sent him to school
where he was registered under the name of John Willis.
That relationship continued until the date of the death of
Willis. John Johnson, known also as John Willis, was in
no way related to the deceased other than as above outlined.

Cora Johnson, known as Cora Willis, made application to
the Industrial Commission for adjustment of compensation
for herself and, as guardian, for her minor child. The Com-
mission refused to award Mrs. Johnson compensation, but
made an award to the child basing the same upon that pro-
vision of the statute designating as dependents members of
the family at the time of the accident. That provision of
the statute (Comp. Laws Utah 1917, § 3140, subd. 5, as
amended by chapter 67, Laws Utah 1921), enumerating de-
pendents reads as follows:

"The following persons shall be presumed to be wholly de-
pendent for support upon a deceased employé:

"(a) A wife upon a husband with whom she lives at the time
of his death.

"(b) A female child or female children under the age of
eighteen years and a male child or male children under the age
of sixteen years (or over such ages if physically or mentally in-
capacitated from earning), upon the parent with whom he is living
at the time of the death of such parent.

"In all other cases, the question of dependency, * * * shall
be determined in accordance with the facts in each particular case

existing at the time of the injury resulting in the death of such employé, but no person shall be considered as dependent unless a member of the family of the deceased employé, or bears to him the relation of husband or widow, lineal descendent, ancestor, or brother or sister. The word 'child' as used in this title shall include a posthumous child, and a child legally adopted prior to the injury. Half brothers and sisters shall be included in the words 'brother or sister' as above used."

The entire controversy here revolves around the question whether the boy, at the time of the death of Ed. Willis, was a member of Willis' family. Just what relationship must exist between individuals to constitute a family, or to make each individual a member of the same family, probably cannot be stated in any general or comprehensive definition. Many statements in the opinions of the courts can be found enumerating certain elements which are necessary to constitute a family. These statements are usually employed in opinions in which the courts are considering certain legislative enactments and are necessarily limited to the determination of what the lawmaking body intended by the particular statutes under consideration. It would aid little in determining the legislative intent in enacting the statute quoted above to write into this opinion the various definitions found in the authorities of what constitutes a family. It is however, in our judgment, clearly deducible from the weight of authority that the family relationship is a social status and not one necessarily founded upon contract; also that the individuals may be members of the same family without sustaining to each other any blood relationship. There must, however, be some legal or moral obligation for support existing between the individuals composing the family.

In 12 A. & E. Ency. L. (2d Ed.) 89, under the title "Exemptions," it is said

"A 'family' has been defined to be 'a collection of persons living together under one head,' but this definition is too broad. It would include collections of persons which have repeatedly been held not to constitute a family within the meaning of the exemption laws. The term, as used in these laws, means something more than this. According to the weight of authority it means a collection of persons living together under one head, under such

circumstances or conditions that the head is under a legal or moral obligation to support the other members, and the other members are dependent upon him for support."

That a "member of the family," as that phrase is used in the statute quoted, may be other than a blood relative of the deceased is apparent from the wording of the statute itself. The statute provides what individuals sustaining blood relationship to the deceased shall be considered dependents, and also provides in addition that persons who are members of the family of the deceased may be dependents. The statute is that "no person shall be considered as dependent unless a member of the family of the deceased employé, or bears to him" certain kinship specified. It is clear from that statute that the Legislature intended to give others than the blood relations mentioned in the section the right to claim compensation as dependents by reason of being members of the family of the deceased. Otherwise the insertion of the phrase "member of the family" was wholly unnecessary, and in the statute would be meaningless.

In this connection it is insisted in plaintiff's brief that in this state "it is clearly established that a 'member of the family' is restricted to those to whom the head of the family owes a duty through relationship by blood or marriage." Authorities are cited supporting the rule that it is well-settled that words having a precise and well-settled meaning in the jurisdiction have the same sense or meaning in a statute, unless a different intent is made manifest by the statute. Based upon this general premise it is argued by counsel for plaintiff that at the date of the enactment of the Workmen's Compensation Law the relationship of those constituting the members of a family was fixed by the statute of exemptions. That statute (Comp. Laws Utah 1917, § 2905) defines the phrase "head of a family." The statute enumerates those who shall be included as members of a family in determining the exemptions the head of a family is entitled to claim. In our judgment is should be sufficient answer to that argument to say that the purposes and objects sought by the two statutes are entirely different. The Legislature could therefore consistently intend a different

meaning to the same words found in both statutes, if the
wording had been the same. In addition, if it was the in-
tention of the Legislature in the Workmen's Compensation
Law to limit the members of a family to the individuals
sustaining the relationship to the head of the family as thus
outlined in the exemption statute, then the enumeration of
those who are entitled to be considered dependents in the
Industrial Act was wholly unnecessary, for the reason that
every person who is entitled to compensation by reason of
blood relationship as the same are enumerated in the act
under consideration are enumerated in section 2905, supra.
If it is not apparent from the purposes of the two acts that
the legislative intent was not the same in attempting to fix
and determine the members of a family, the wording of the
two statutes would clearly indicate that the Legislature had
no intent to limit the members of the family to the individ-
uals mentioned in the exemption statute.

It will be readily conceded that the deceased in this case
was under no legal obligations to support this minor. The
question for determination here, then, is whether or not the
deceased was under a moral obligation to support this child.
In the determination of that question necessarily the con-
duct and attitude of the deceased toward the infant must
and should be considered. As has been pointed out, the
deceased had the child in his household; supported him;
introduced him as his son, and introduced the boy's mother
as his wife; placed him in school and gave him his name;
supplied him with every necessary of life. It is reasonable
to conclude and to make a finding from such conduct that
had the deceased lived he would have continued to support
the child and give him such advantages as his condition
in life warranted and as he had been doing for a period of
six years. While it is true that the boy knew that the
deceased was not his father, nevertheless it appears that
he addressed him as father, and he was treated by the de-
ceased as his own child.

As has been pointed out by the courts in numerous cases
the Workmen's Compensation Law creates a liability un-

known to the common law and, prior to the enactment of such legislation, unknown to statute law. The question of negligence is not an element of liability. While such acts create an additional liability, the law likewise creates additional rights in the parties deprived of maintenance by industrial accidents. The purpose of that phase of the law is to charge upon an industry the losses necessarily sustained in conducting such industries, and to that extent relieve society from the support of those left dependent by accidents resulting from or occurring in such industries.

The Suprer e Court of California in a recent case (*Moore Shipbuilding Corp.* v. *Ind. Acc. Comm.*, 185 Cal. 200, 196 P. 257, 13 A. L. R. 676) had under consideration a question similar to the one presented by this record. It is true that the California act is not worded exactly the same as is the Utah statute, but in effect and in the purposes sought to be accomplished both are the same. An award was made by the California Commission in favor of a child of the age of three years who had been residing in the household of the deceased. The mother of the child and the deceased were living in an adulterous relationship at the date of the accident. The court, in a well-considered opinion, upheld the award made by the Commission. In the course of the opinion the court said:

"As has been pointed out, the benefits of this law are not provided as an indemnity for negligent acts committed or as compensation for legal damages sustained, but is an economic insurance measure to prevent a sudden break in the contribution of the worker to society by his accidental death in the course of his employment. From this economic standpoint it makes no difference whether the workmen's earnings are being distributed to those whose support he has voluntarily assumed, or to those who are legally entitled to such support. In either case they are the reliance of dependent members of society. The only difficulty is that where there is no legal dependence it is harder to determine that the contribution of support has been made so as to constitute the recipient a dependent in good faith."

Olney, J., in a concurring opinion, clearly states what, in our judgment, should be the controlling consideration by the courts in determining awards of this nature. He says:

"I concur in what Judge Sloane has said, and would add merely a word. It seems to me that in view of the finding of the Commission that Bauer had assumed the relation of father toward the child, the character of his relations with the child's mother is a false quantity in the case. The final question was, Did Bauer stand in loco parentis toward the child, had he genuinely assumed toward the child the relation of father? If he had (and the Commission finds he had, and the finding is supported by the evidence), it makes no difference how or why he had. The relation was there, and by virtue of it the child was a member of his household in good faith, and that is enough. If an unmarried man should pick up some waif, become attached to it, have it live with him, support it and look after it, assume toward it in every way the character of a father, could any one seriously doubt that it was a dependent member of his household? If it would be a dependent member of his household under those circumstances, how is the relation changed or affected by the fact that it originated in an unlawful relation with the child's mother? That fact might have some weight in determining whether he had genuinely assumed the relation of father toward the child, but, if it appeared that he had, the reason or reasons why he had done so become wholly unimportant."

We are of the opinion and so hold that the testimony supports the Commission's finding that the minor was a member of the deceased's family, as that expression is used in the Workmen's Compensation Law.                    2

The award is affirmed.

WEBER, C. J., and FRICK and CHERRY, JJ., and ERICKSON, District Judge, concur.

THURMAN, J., did not participate herein.