Henry DeRoller, Appellant, *v.* William Bohan, Jr. (Also Known as William Harris), and Another, Respondents, Impleaded with Modern Woodmen of America, Defendant.

Fourth Department, November 19, 1924.

Insurance — fraternal benefit life insurance — action by beneficiary — certificate named stepson as beneficiary as member of insured's family — by-laws provided that member of family could be beneficiary — plaintiff who was six years old when his mother married insured, continued to reside in family until after mother's death — plaintiff acted toward insured as son and took care of him — plaintiff did not cease to be member of insured's family during time he was away from insured's home seeking work — plaintiff was member of insured's family at time of latter's death — insurer had right, if subject to New York laws, to limit beneficiary to members of family under Insurance Law, § 231, subd. 2.

The plaintiff, a stepson of the insured, who was designated as beneficiary in a certificate of insurance granted by a fraternal benefit society, he being named therein as a member of the insured's family, was a member of the family at the time the certificate was issued and continued to be such within the meaning of the by-laws of the insurer up to the time of the death of the insured, and is entitled to recover the face of the certificate, since it appears that the plaintiff's mother married the insured when the plaintiff was six years of age; that the plaintiff resided with the insured and his mother for many years and during all that time acted toward the insured as a son would act; that the plaintiff assisted his mother and stepfather financially and after his mother's death continued to live with his stepfather and to support him when the latter was not working; that while the plaintiff did not live with his stepfather for about one year before the latter's death, that separation was temporary, due to the fact that the home had been sold and that the plaintiff was compelled, in order to secure work, to leave his stepfather; and that even after this temporary separation, the plaintiff continued to visit his stepfather and contribute to his support and after his death paid the stepfather's funeral expenses.

The defendant, a fraternal benefit society organized under the laws of the State of Illinois, if it is subject to the laws of the State of New York, has the right under subdivision 2 of section 231 of the Insurance Law to limit stepson beneficiaries to members of the family of the insured.

Davis and Sears, JJ., dissent, with opinion.

Appeal by the plaintiff, Henry DeRoller, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 24th day of May, 1924, upon the decision of the court rendered after a trial at the Monroe Equity Term.

*Van Alstyne, Toan & Allen* [*Thomas L. Toan* of counsel], for the appellant.

*Decker & Menzie* [*George P. Decker* of counsel], for the respondents.

Taylor, J.:

The defendant Modern Woodmen of America is an assessment fraternal benefit society organized under the laws of the State of Illinois. It appears that in October, 1903, one James Bohan, of Rochester, N. Y., was accepted as a beneficiary member of said society; that in April, 1917, upon the application of said member, a certificate was issued, designating this plaintiff as beneficiary, he being named in said certificate as a " member of his [James Bohan's] family." Section 50 of the by-laws of this society provides, among other things, that " no payment shall be made upon any benefit certificate to any person who does not bear the relationship as wife, surviving child, legally adopted child, heir, blood relative or person dependent upon, or member of the family of the member at the time of his death." In August, 1921, said James Bohan died and due proofs of death and of plaintiff's right to a benefit fund of $1,000 from said society were filed with the corporation, pursuant to the contract. During all the period mentioned said James Bohan was a member of the society in good standing, and the said certificate was of full force and effect. After this action was brought against the society defendants Bohan and Golden were interpleaded, and the benefit fund was paid into court by the society to await the outcome of the action.

The plaintiff contends that it has been established that said James Bohan married plaintiff's mother when plaintiff was but six years old; that ever since that time plaintiff has been treated as said Bohan's own son and raised as such; that with the exception of four years spent in the navy, plaintiff lived with his stepfather and contributed to his support and that of plaintiff's mother; that upon his discharge from the navy plaintiff put into the family purse from his savings the sum of $500; that he paid his mother's funeral expenses and remained with his stepfather until June, 1920, and supported his stepfather when the latter was not working and took care of him when he was sick; that while plaintiff did not live under the same roof with his stepfather from June, 1920, until the latter's death in August, 1921, the separation was temporary, due to the fact that the old homestead was sold, that there was a temporary business depression, and that plaintiff was away seeking work; that plaintiff continued to visit his stepfather and did not have the latter dwelling with plaintiff on account of sickness in plaintiff's family, but that all cordial relations were maintained and appellant continued to contribute to his stepfather's support; that during the last illness of the stepfather plaintiff visited him frequently and took him provisions and money and finally paid his funeral expenses, amounting to the sum of $225.

Plaintiff contends that under these circumstances the theory of the lower court that the words " member of the family " meant merely a person living in the same house; that it meant mere physical presence under a common roof, like a boarder or servant, is too narrow a construction of the language of the by-laws; in short, that the plaintiff was as much a member of the family as would have been a son of the same blood, and that whatever separations occurred were due to necessity alone and were not permanent.

Respondents assert, and correctly, that the society's by-laws in force and the benefit certificate issued to James Bohan made provision in case of a " disqualified beneficiary." But this, of course, does not tend to indicate that this plaintiff became disqualified. The respondents further claim as to the vital point involved, that although the society's representative realized that plaintiff, as proposed beneficiary, was a stepson of its member, James Bohan, the plaintiff was accepted, not as such, but as a member of the family simply, as one who was not a blood relative, one who was really only eating and sleeping in James Bohan's house and helping the family somewhat financially to pay for his board and " keep; " that plaintiff married; that the old home was broken up and that plaintiff, at least after June, 1920, maintained with his wife a home of his own; and that at the time of and long before the death of James Bohan plaintiff was not of the household of his stepfather and, therefore, not a " member of his family " within the benefit society's contract.

We see nothing in appellant's claim that the society accepted him as a stepson beneficiary under the New York statute, that its act in issuing the certificate was *ultra vires* or that the society " has waived its right to object to the appellant as an improper beneficiary." Even if the society is subject to the laws of the State of New York, as alleged by appellant, it is permitted by subdivision 2 of section 231 of the New York Insurance Law (as added by Laws of 1911, chap. 198)* to " limit the scope of beneficiaries within the above classes." Therefore, the society had the right to limit stepson beneficiaries to " members of the family." So no question of *ultra vires* is involved. Nor has the society waived any rights, for it expressly made plaintiff a beneficiary as a member of James Bohan's family.

Taking up next the main controversy, how can it be fairly said that from the time James Bohan married plaintiff's mother (plaintiff being then six years old) until fourteen months before the death of James Bohan, over twenty years, plaintiff was not, to all intents

---

* Since amd. by Laws of 1924, chap. 536.— [Rep.

and purposes, as fully and intimately a member of James Bohan's family as a real son would have been? The testimony all indicates it; no one disputes it. The court below, in its memorandum of decision, says: " He was looked upon by Mr. Bohan as a son, and in turn called Mr. Bohan father, deferred to and treated him as such, in fact comported himself more filially than is frequently the case in children of the flesh. That they stood toward each other in the mutually acknowledged relationship of father and son, and with the mother until her death, and thereafter, until Mr. Bohan's death, constituted one united and happy family, cannot be doubted by any one conversant with the situation." If this be granted, it must be conceded that from June, 1920, when plaintiff was obliged to leave his stepfather's home temporarily for financial reasons only, plaintiff continued to show toward his stepfather all the affection and solicitude and attention of a son consanguine. Nothing occurred, nothing was done, nothing was neglected to mar or weaken the old relation. It must be conceded that a blood son, situated as this plaintiff was, and behaving as plaintiff did during these fourteen months, and on and after his stepfather's death, would not have lost his standing in public estimation as a member of the family nor would he have lost it in law. Wherefore, then, should this plaintiff be held without the pale? He was more than a servant or a companion or a boarder or some similar mere adjunct of the family circle. He was the son of James Bohan's wife, held in affection by his stepfather, giving full affection in return, behaving all the time as a good son should behave. What did he do or omit to do at any time which should demote him?

*Tepper* v. *Royal Arcanum* (61 N. J. Eq. 638) is not entirely in point; but in the last paragraph on page 642 is found a discussion of the relative status of a stepchild and a blood child, which is applicable to this case.

*Callahan* v. *Switchmen's Union of North America* (189 App. Div. 5) is not in point; for there the half-sister named beneficiary as " sister " (the actual fact being unknown to the society) was specifically barred as a lawful beneficiary by the constitution of the society. In the instant case the society, within the language of its by-laws (§ 50), accepted the plaintiff as beneficiary as a " member of the family " of Jame Bohan. We grant that this is not a concession that plaintiff was accepted otherwise than as a " member " who was not a blood relative specifically named in said section 50. However, beyond all this the question is: " What was the *fact* as to the character of plaintiff's membership before and after James Bohan's death; what is the full significance of the words ' member

of the family' in the by-laws before us?" The word "family" is variously authoritatively defined, so we get little help from definitions. The word may mean "a group of relatives making up a household;" it may mean, as respondents contend here, such a household, including servants or even lodgers. The court below says in its memorandum that if the words "member of the member's family" are intended to indicate a relationship of family as between (certain blood relatives) "the limiting words 'at the time of his death' would be devoid of meaning." This is true. For such blood relatives could not lose their status as "members" by doing and experiencing what plaintiff did from June, 1920, to August, 1921. But it does not, therefore, follow that the words first above quoted comprehend, outside of the blood relatives, merely servants or boarders or other similar temporary members of the household. It is easy to understand how a stepson might be a member of a family under such circumstances of non-intimacy that he might easily lose his status as such member. And it does not at all follow that a stepson so intimately of the family as this plaintiff was and continued to be could not be a "member of the family" of James Bohan within this contract before and all along up to the time of the latter's death, even though compelled to be temporarily absent from his old home.

It is apparent that at the time this society accepted plaintiff as a beneficiary he was conceded to be some sort of a "member of the family" of James Bohan. The society does not now dispute plaintiff's claim. It has paid the money into court and is indifferent.

Everything considered, it seems clear that this plaintiff, up to June, 1920, was in fact a member of James Bohan's family, that the by-laws of the society can fairly be construed to comprehend him as such, that he continued to be such member until August 20, 1921, and that the court, rather than seeking to find a constricted meaning in the language of the contract prepared by this fraternal benefit society, should, in justice to all these parties, construe it broadly to carry out the evidently benevolent purposes of such organization.

The judgment should be reversed and a judgment entered directing the payment of the insurance fund and appropriate interest to the appellant, with costs.

Hubbs, P. J., and Clark, J., concur; Davis and Sears, JJ., dissent and vote for affirmance in an opinion by Davis, J.

Davis, J. (dissenting):

The by-laws of the fraternal organization issuing the benefit certificate designated explicitly who might be beneficiaries. This

group did not include a stepson, but did include a " member of his family whom the applicant shall designate in his application." And further, that " No payment shall be made upon any benefit certificate to any person who does not bear the relationship as * * * member of the family of the member at the time of his death."

For convenience I will hereinafter refer to the fraternal organization as the " insurer," and to Mr. Bohan, the deceased member, as the " insured."

The question to be determined then is the meaning of the term " member of the family of the member at the time of his death." It is a case largely of first impression, for no controlling authorities have been cited by counsel, nor have we been able by our own industry to discover any decisive under the facts here presented.

As my brother TAYLOR has pointed out, the common definitions of " family " or its constituent " members " are not particularly helpful in reaching a decision here. We must look then to the meaning the parties themselves had in mind when they entered into the contract.

It may be said generally that a member of a family by blood does not lose his status when he leaves the parental roof and makes elsewhere a home of his own. (*Matter of Shedd*, 60 Hun, 367; affd., 133 N. Y. 601.) Relationships established by marriage ordinarily continue and are recognized as long as the marriage exists. But if the tie is broken by death or otherwise, the relationship is ordinarily regarded terminated after a lapse of time or by separation, lack of association, or the formation of new relations. The same rule is applicable in the case of foster children, servants and others who come into a family and live there for a long time. A feeling of attachment grows up between the different members of such a family, the relationship is recognized and such persons are commonly spoken of as members of the family because they live in the same household. But when the tie is broken and the members are separated by distance and are no longer in intimate association, but those departing form new ties, and set up homes and have families and interests of their own, there can be no doubt that they cease to be members of the original family in the household where they once lived. In this respect their status is different from children or other blood relatives who follow the same course.

In the case under consideration the parties to the contract had a definite agreement and understanding as to what should constitute a member of the family at the time of the death of the insured. The certificate or policy provided: " That all the conditions and agreements contained in said member's application

for beneficial membership and in this certificate and in the by-laws of this society * * * shall be fully complied with;" and provided further that "If any beneficiary named in this certificate shall die * * * or in the event of the disqualification of such beneficiary * * * and if such member shall have failed to have had another beneficiary named in the place and stead of such deceased or disqualified beneficiary, then the amount specified to be paid such deceased or disqualified beneficiary * * * shall be payable in accordance with the by-laws."

It is evident then that both insurer and insured had in mind that the beneficiary might by death or disqualification eventually lose his right to receive payment under the terms of the certificate.

Before the policy was issued the insured made an application to change the beneficiary, formerly his wife, then deceased, and asked that DeRoller (not eligible as stepson) be substituted as beneficiary. In connection therewith he made a "relationship statement" for the purpose of establishing DeRoller's right to be designated. This statement consisted of printed questions on a blank furnished by the insurer and answered by the insured. The sole reason why the insured was entitled to name plaintiff as his beneficiary was that the latter was a member of the former's family. He had been a stepson. His mother the wife of insured, had died but DeRoller was continuing to live in the household as a member of the family of the insured. Certain questions and answers in the statement are as follows: " Q. Do you and the said proposed beneficiary live in the same house? A. Yes. Q. How long have you done so? A. About nineteen years. Q. Are you members of the same family circle? A. Yes. Q. If so, how long have you been? A. About nineteen years. Q. Who is the head of the family in which you reside? A. I am. Q. Do you and said proposed beneficiary usually eat at the same table? A. Yes. Q. Do you and said proposed beneficiary usually sleep in the same house? A. Yes."

Before the policy was issued the insured was notified that the insurer deemed plaintiff eligible to be his beneficiary under the relationship of "member of immediate family." His attention was called to the by-laws that no payment could be made unless the person was a member of his family at the time of his death, and if Mr. DeRoller should cease to be a member of the family, insured should apply at once for a change of beneficiary. Thereafter the certificate was issued and delivered.

The parties had, therefore, a definite understanding at and before the issuance of the certificate, that as to them a member of the family was one of the household of which insured was the

head, one living under the same roof, eating at the same table and being a part of the " family circle; " and that the beneficiary might by abandoning that relation become disqualified.    The right of DeRoller to be a beneficiary could not arise except upon such express conditions, and could not continue after the conditions changed to disqualify him.    The certificate, by-laws and application together constituted the contract    (*Callahan* v. *Switchmen's Union of North America,* 189 App. Div. 5.)

There is no doubt that the family relation was broken by the sale of the home, by the fact that the plaintiff having formed other family ties went with his wife to a distant city and established and maintained a home elsewhere than with the insured, who had also sought another home, and that the relationship as members of a family within the intent of the parties to the contract, had entirely ceased.    Adroitness in piecing together favorable fragments of evidence into new findings cannot obscure the bald, outstanding fact that before the death of the insured, DeRoller and Bohan had definitely and permanently separated.

We must give that construction to the term " member of the family of the member at the time of his death " that the parties themselves gave it when the certificate was issued, and the construction that they themselves recognized and adopted as within the contemplation of the by-laws with which both were familiar. Sentimental considerations should not be urged to invalidate the contract.    The by-laws are controlling and when the evidence is clear the contract made thereunder should be enforced, even though a beneficiary named by the insured loses the benefits it was hoped he would receive (*Sweeney* v. *Modern Woodmen of America,* 237 N. Y. 536); and where the beneficiary named is disqualified, the amount due under the certificate will be paid to those who under the by-laws have a legal claim.    (*Mendelson* v. *Gausman,* 157 App. Div. 370; *Dusenbury* v. *Grant Council, No. 128,* 96 Misc. Rep. 665; *Woodbury* v. *Schroeder,* 116 id. 673.)

My conclusion is that the plaintiff prior to the death of the insured ceased to be a member of the family, and that under the by-laws of the insurer, the amount due on the certificate cannot legally be paid to him, and that the judgment should, therefore, be affirmed.

SEARS, J., concurs.

Judgment reversed on the law and facts, with costs, and judgment directed for the plaintiff, with costs.    Findings of fact disapproved and new findings made, and conclusions of law disapproved and new conclusions made, in accordance with the opinion.