## SCHURLER v. INDUSTRIAL COMMISSION et al.

No. 5618.   Decided April 19, 1935.   (43 P. [2d] 696.)

*Ralph T. Stewart,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen.. and *A. E. Moreton,* of Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to the Industrial Commission of Utah to review an order denying compensation to the applicant, Mrs. Madge Schurler. It is undisputed that C. A. Schurler was killed in the course of his employment on or about the 11th day of November, 1933, and that his employer, the receiver of the Salt Lake & Utah Railroad Company, was an employer of more than three employees. The case presents two questions: (1) Does the applicant come under any class of dependents included in the Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.) by either presumption or fact? and (2) was the deceased at the time of his death engaged in intra or inter state commerce? The facts necessary to the solution of the first question are as follows: That in 1910 Mr. Schurler married a woman whose first name was Verna; that she deserted him and apparently went to Nevada to live in a house of ill fame, from where it is thought she went to California and had not been heard of since; that she has been absent from her husband's home for more than 7 years, and nothing has been learned during or since that time as to whether she is living or dead; that on the 10th day of August, 1911, Schurler instituted an action for divorce against Verna; that summons in said action was never served upon her; that no divorce decree was ever granted; that in 1911, after the desertion by Verna, the applicant came to live with the deceased for the purpose of keeping house and taking care of his mother, who was ill and suffering from the effects

of an accident. She lived in that capacity for approximately a year. Applicant was told by deceased that he wished to marry her when the divorce was obtained. Applicant and deceased agreed to be husband and wife; they lived together as such, he introducing her as Mrs. Schurler. He bought her a wedding ring and built a home for applicant and his mother, where they lived together as a family, she caring for the home and for decedent and his mother, and the decedent furnishing the living for the three of them until the death of his mother in 1928. Thereafter decedent continued to support and live with applicant as his wife. Applicant nursed decedent when he was ill and decedent nursed applicant when she was ill. He secured policies of insurance payable to her as his wife. She executed notes and mortgages on real and personal property as his wife. For approximately 21 years they lived together as man and wife.

The finding of the commission was that they were never legally married and that she was in fact living with deceased as his common-law wife, and that she was supported by him and dependent upon him for her maintenance and support. There were no surviving children. The conclusion of the commission was that at the time of his death decedent was engaged in interstate commerce. The denial of compensation was put on this ground and not on any conclusion that the applicant was not a dependent of deceased as meant by the act.

In this state a common-law marriage cannot be consummated. By that we do not mean to say that a common-law marriage consummated in a state where it is recognized would not be valid here. In this state marriage must be consummated by a ceremony as provided by the statutes. There is no question, therefore, but that the applicant does not come under the class of presumed dependents as provided for by section 42-1-67, R. S. Utah 1933, providing that the wife shall be presumed to be dependent upon the husband with whom she lived at the time of his death. The same section goes on to provide:

"In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death to such employee, but no person shall be considered as dependent unless he is a member of the family of the deceased employee, or bears to him the relation of husband or wife, lineal descendant, ancestor, or brother or sister."

A person, to be a member of the family of a decedent within the meaning of the partial section just quoted, does not need to be a blood relation, nor does such person have to bear any of the relationships as set out after the word "or" in the above-quoted subsection. *Utah Fuel Co.* v. *Ind. Comm. et al.*, 64 Utah 328, 230 P. 681. The only question in this division of the case is as to whether Mrs. Schurler can be considered a member of the decedent's family as that was meant by the Compensation Act. The point seems to have been squarely decided in both the cases of *Utah Fuel Company* v. *Industrial Commission*, just cited, and *Sanders* v. *Industrial Comm.*, 64 Utah 372, 230 P. 1026, although the facts in each of those cases differed somewhat from the facts here. In the Utah Fuel Company case the applicant had lived with the deceased ostensibly as wife for more than 6 years prior to the date of the accident. During all that time she had a husband living from whom she had not been divorced and the deceased had a wife living from whom he had not been divorced. In that case there was no question but that both the husband of the applicant and the wife of the decedent were living, whereas, in this case, it is not known whether the wife of the decedent was living at the time of his death, more than 7 years having elapsed since the deceased had heard from or about her. We shall discuss later whether that element changes the legal situation.

In the Sanders Case the applicant obtained a divorce from her husband which became final on October 25, 1923. She was married at Evanston, Wyo., to the deceased on June 16, 1923, before the expiration of 6 months from the filing of the interlocutory decree. The deceased and the applicant

purposely went to Wyoming to avoid the effect of the 6 months' provision. The court held that the marriage was void and that the deceased, who was killed on March 8, 1924, less than a year after the pretended marriage to the applicant, had been living in an adulterous relationship. The Sanders Case differs from the present case in the fact that the parties intentionally went to Wyoming in order that they would not have to wait the required 6 months. At the time of the pretended marriage ceremony the applicant in that case had an undivorced husband living. In both cases above discussed compensation was denied.

The applicant in this case admits that, in order to find for her, the principle laid down in the two Utah cases above discussed would have to be abandoned by this court, because the principle in both of those cases is to the effect that a person living in an illicit relationship with an employee at the time he is killed is not a member of his family, even though the two intended to assume in good faith the marriage relationship. The cases hold that there is no moral or legal duty on the part of the deceased to support the woman who was not married to him, and therefore that the applicant was not a member of the decedent's family, even though they lived together under the same roof in one community, and in one case with a child of the applicant who had been incorporated in the community. We have sympathy for the applicant's position in this case. The unfortunate woman looked upon herself as the wife of decedent, and they lived together to all intents and purposes as husband and wife. In fact, they were just as much a social unit as a de jure family. They were de facto a social unit. Our society is made up largely of social units called families. Where two persons live together such as these did and perhaps have children, there is much to be said in favor of treating them in law as a family, at least for purposes of compensation. But we are unwilling in the light of the cases already decided by this court to change the principle therein laid down. Those decisions do not rest alone upon morals. Illegality is not necessarily immorality. In

other states, common-law marriages are recognized, and we would not say that people who have conscientiously lived together in such relationship in those states are less moral than those who have gone through the marriage ceremony, although in our state the ceremony is most necessary. Certainly, many cases may be shown where a man and woman have lived together as de facto man and wife during their lives and have been more moral than those who have lived together as de jure man and wife.

The two Utah cases above discussed are based on grounds of public policy rather than on the pure ground of morals. The theory which lies behind them is that it is better to deny compensation to a person in Mrs. Schurler's position than it is to open the door to the entrance of cases where applicants living in meretricious relationships may build up situations to show themselves as a member of a family if such membership can grow out of or be built around an illicit relationship.

In this case this relationship between the parties had its inception at the time when the wife of the decedent was living. She may be still living. There is evidence that the decedent pointed out his wife to the applicant while they were out walking together. This was before the wife completely disappeared from the scene. It is contended by the applicant that, while the relationship had its inception while the wife of the decedent was known to be living, yet there is a presumption of death, because she has not been heard of for more than 7 years, and that therefore, at least long before the decedent died, it must be presumed that he was not living in an adulterous relationship. But the decision must rest, not upon the presence or absence of an adulterous relationship, but upon the specific point that, for the purpose of compensation in this case, an applicant cannot be a member of a man's family where that socalled family membership arises out of or exists by virtue of cohabitation with him in a nonmarital relationship. We cannot presume that after all these years the membership in the family would have continued without this relationship because at the beginning it was said

to be free from such relationship. The fact is that it did exist at the time of the death because of such relationship.

The defendants have cited, among others, the cases of *Meton* v. *State Ind. Insur. Dept.*, 104 Wash. 652, 177 P. 696; *Hall* v. *Ind. Comm.*, 165 Wis. 364, 162 N. W. 312, L. R. A. 1917D, 829; *Green* v. *Green* (Tex. Civ. App.) 235 S. W. 980; *Scott* v. *Independent Ice Co.*, 135 Md. 343, 109 A. 117; *Meehan* v. *Edward Valve & Mfg. Co.*, 65 Ind. App. 342, 117 N. E. 265; *Brown* v. *Long Mfg. Co.*, 213 Mich. 221, 182 N. W. 124. These cases are not strictly in point, because in none of the states where they were decided was there any provision that a member of the family who was actually dependent, independent of blood relationship or spouseship, was entitled to compensation. In the last case it was a question of whether a boy born of what was alleged to be a common-law marriage, but which was held by the court not to be, was a lineal descendent within the meaning of the act. But the cases of *Armstrong* v. *Ind. Comm. of Wisconsin*, 161 Wis. 530, 154 N. W. 844; *Memphis Fertilizer Co.* v. *Small*, 160 Tenn. 235, 22 S. W. (2d) 1037; *Baldwin* v. *Sullivan*, 201 Iowa 955, 204 N. W. 420, 208 N. W. 218; *Industrial Comm. of Ohio* v. *Dell*, 104 Ohio St. 389, 135 N. E. 669, 34 A. L. R. 422, involved statutes whereunder it was permissible to grant compensation to a member of a decedent's family although not related to the decedent by blood or marriage.

The California case of *Temescal Rock Co.* v. *Ind. Acc. Comm.*, 180 Cal. 637, 182 P. 447, 448, 13 A. L. R. 683, and *Louden* v. *Ind. Acc. Comm.*, 105 Cal. App. 65, 286 P. 1045, cited by applicant, are in essence contrary to the line of cases last above mentioned. In the first California case cited applicant and deceased were ignorant persons of Spanish nativity. They believed themselves married because they got a license to marry and then lived together as man and wife. It was in effect a common-law marriage. Common-law marriages were not recognized in California at that time, and yet the court held that the applicant was "in good faith a member of the family or household." In the Louden Case

applicant and deceased married "Indian way," which really amounted to a common-law marriage. There the court held that she was a member in good faith of the employee's household. These cases cannot be distinguished from the contrary holding cases purely on the ground that the words "good faith" and the word "household" are used in the act. Even under the Utah act a person who was dependent upon the deceased employee and was claiming on the basis of being a member of the family would have to be a member in good faith. Such words would be read into the act. "Household" appears to mean a family residing under one roof. Had that word been used in the Utah act, the decision in the Utah Fuel Company and the Sanders Cases would have been the same, because those cases were based upon the theory that one could not classify himself as a member of the family through the assumption of an illicit relationship. True, in both California cases no adulterous relationship was involved. Perhaps, if there had been, the cases might have held the relationship was not in "good faith," but that would have been reading into the term "good faith" what at times might be a mere technical breach of standardized morality. Had this question come before us now for the first time, we might lay down a different rule. But this court having in two cases established the rule as it now exists, we must abide the pleasure of the Legislature to express the intention that a different rule should prevail.

Holding as we do on the first question stated at the beginning of this opinion, it is unnecessary for us to consider the second question. The commission based its conclusion and order upon the finding that C. A. Schurler was engaged in interstate commerce at the time of his ■ death, and therefore that it did not have jurisdiction. But its third finding sets out that the "record disclosed the decedent and applicant were never legally married and that she was in fact living with him as his common-law wife." Therefore the findings are sufficient to support the order denying compensation, although the conclusion is based on a

different finding. In a sense, the finding that the applicant and decedent were living in a common-law marriage relationship is itself a conclusion. It would be difficult to see what more could be put in the conclusion except the concluding phrase that the claim had to be dismissed, which is already there except that it follows from a different basis.

The order of the Industrial Commission denying compensation is affirmed on the ground that the applicant is not a dependent within the meaning of the Workmen's Compensation Act; costs to defendants.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.