UTAH FUEL CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5796. Decided February 11, 1937. (64 P. [2d] 1287.)

*H. J. Binch,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Grover A. Giles,* Asst. Atty. Gen., for defendants.

LARSON, Justice.

This is a proceeding to review an award made by the Industrial Commission in favor of Mary N. Douros, the mother, Zoi Douros, a blind sister, and Mary L., Theodora and Louckia Douros, nieces of Tony Douros, deceased. The beneficiaries under the award all reside at Pyri, Thebes, Greece. The mother and sister are aliens. Tony Douros was accidentally killed while working in a coal mine of the Utah Fuel Company at Clear Creek, Utah, April 2, 1935. After proper hearing, the Commission on January 11, 1936, ordered the Utah Fuel Company to pay to Mary N. Douros, mother of deceased, for the benefit of all the beneficiaries named above, compensation at the rate of $4 a week for 312 weeks. The Fuel Company brings this proceeding for review of the award, contending: (1) That there is no evidence to support the award; that is, there is no proper evidence of dependency of any of the beneficiaries; (2) that the three nieces named as beneficiaries in the award are not within the classes named by the statute as possible dependents; and (3) that the dependents, if any, are aliens not residing within the United States or Canada, and the award should therefore be reduced by 50 per cent as provided by section 42-1-68, R. S. Utah 1933.

The undisputed facts in the record are as follows: That Tony Douros, deceased, was a native of Greece, 41 years of age, unmarried, had resided in the United States about 22 years, and was, at the time of his injury and death, em-

ployed as a miner by the Utah Fuel Company at Clear Creek, Utah; that his weekly wage at the time of the injury was $18.74 based upon a full year. His mother and sister were natives of Greece and had always resided there. The mother was a widow, and the sister, blind and unmarried. Deceased had been sending money to his mother in varying amounts at varying times for several years past. Tony's brother, Luke Douros, died at Bingham, Utah, and left surviving him a widow and three daughters. Some years later, Luke's widow died and the three girls were, by Tony, sent to Greece to his and Luke's mother. They are the three nieces of Tony mentioned in the award.

The Fuel Company first assails the award on the ground that there is no sufficient proof of dependency. There is undisputed evidence that deceased made some remittances to his mother and that she and the sister were in part dependent upon Tony for support. At the hearing, the company admitted partial dependency. Since this court ▮ has not the jurisdiction to pass upon the correctness of the Commission's findings if there is any evidence upon which they might be based, and can only set them aside if the Commission acted arbitrarily or capriciously, it follows that the finding of dependency as to the mother and sister of deceased must be sustained. *Norris* v. *Industrial Comm.* 90 Utah 256, 61 P. (2d) 413. There is not only evidence of this dependency, but also evidence as to the amount the deceased could, and would likely have paid to his mother and sister. *Combined Metals Reduction Co.* v. *Industrial Comm.*, 74 Utah 247, 278 P. 1019.

The second assignment, however, presents a different question. Are the three nieces such persons, under the record in this case, as can be considered and held to be dependents under the statute? R. S. Utah 1933, 42-1-67, creates the presumption of dependency for a wife and children, and then says:

"In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular

case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless he is a member of the family of the deceased employee, or bears to him the relation of husband or wife, lineal descendant, ancestor, or brother or sister. The word 'child' as used in this title shall include a posthumous child, and a child legally adopted prior to the injury. Half brothers and half sisters shall be included in the words 'brother or sister' as above used."

Not every one to whose support a workman, who is accidentally killed, may have contributed is entitled to compensation. Compensation is payable only to those who may be considered as dependents under the law. If every one to whose support a workman may have voluntarily contributed at times, or to aid whom one may feel morally responsible, were to be adjudged dependents, the award ofttimes would be dissipated among so many that it would be of no value or help to any. The law was not written to make effective by legal mandate the Christian teaching that every man is his brother's keeper, but to secure to one's legal dependents some degree of compensation when their breadwinner is taken away. The statute has fixed, as persons who may be dependents within the act, the spouse, children, lineal descendant, ancestor, brother, sister, or member of the family of deceased. If the nieces come within this list, it must be as "member of the family" of deceased. This court has held that to be a "member of the family" one need not be a spouse, a child, or a parent. The term "member of the family" means one whom the head of the family has taken into his home, to live with him, to share such comforts as the home may afford, and toward whom the head has assumed an attitude of a parent, guardian, or caretaker, to whom he owes the obligation of assistance, maintenance, and support. Said the court in the case of *Utah Fuel Company* v. *Industrial Comm.*, 64 Utah 328, 230 P. 681, 682:

"It is, however, in our judgment, clearly deducible from the weight of authority, that the family relationship is a social status and not one necessarily founded upon contract; also that the individuals may be

members of the same family without sustaining to each other any blood relationship. There must, however, be some legal or moral obligation for support existing between the individuals composing the family.

"In 12 A. & E. Ency. L. (2d Ed.) 89, under the title 'Exemptions,' it is said:

" 'A "family" has been defined to be "a collection of persons living together under one head," but this definition is too broad. It would include collections of persons which have repeatedly been held not to constitute a family within the meaning of the exemption laws. The term, as used in these laws, means something more than this. According to the weight of authority it means a collection of persons living together under one head, under such circumstances or conditions that the head is under a legal or moral obligation to support the other members, and the other members are dependent upon him for support.'

"That a 'member of the family,' as that phrase is used in the statute quoted, may be other than a blood relative of the deceased is apparent from the wording of the statute itself. The statute provides what individuals sustaining blood relationship to the deceased shall be considered dependents, and also provides in addition that persons who are members of the family of the deceased may be dependents. The statute is that 'no person shall be considered as dependent unless a member of the family of the deceased employe, or bears to him' certain kinship specified. It is clear from that statute that the Legislature intended to give others than the blood relations mentioned in the section the right to claim compensation as dependents by reason of being members of the family of the deceased. Otherwise the insertion of the phrase 'member of the family' was wholly unnecessary, and in the statute would be meaningless."

In the instant case, the deceased was an unmarried man, never had set up or maintained a home or family; he did not even live with or keep his mother and sister as a family; he had been away from them for over 22 years, assumed no obligations for them, except as he sent them irregular sums of money to help them along. There is no evidence of any connections between Tony and the nieces after the death of Luke, their father, except that after their mother's death, Tony helped send them to Greece. While the girls' mother lived, she provided for the girls, and when she died, Tony did not say, "I will take care of the girls," but

sent them back to Greece where all the other relatives were. We are unable to find any evidence whatever to indicate that the nieces were ever members of Tony's family or that there was any recognized dependence on him. It seems that the Commission must have arbitrarily said that since the girls possibly received some benefit from the money Tony sent his mother, they were to be classed as dependents without regard to the meaning of the term "member of the family," as that had been theretofore defined. The finding that the three nieces, Mary L., Theodora, and Louckia Douros, were dependents of Tony Douros cannot stand, and the order must be modified accordingly.

The third proposition is that the Industrial Commission failed to give effect to the provisions of section 42-1-68, R. S. 1933, with respect to cutting in half the award where it goes to an alien residing outside the United States ■ or Canada. The merit of this argument is practically admitted by counsel for the Commission. The section reads:

"When any alien dependent of the deceased resides outside of the United States of America and any of its dependencies and Canada, such dependent shall be paid not to exceed one-half the amount provided herein."

The statute is specific and unequivocal and is a limitation upon the power of the Commission to grant to any alien dependent of a deceased employee, residing outside of the United States of America and its dependencies and Canada, a sum in excess of one-half of the amount provided in the act. There is nothing in the record to show whether the Commission was mindful or unmindful of this limitation of its powers. The awarding of $4 weekly is less than half of what the Commission could have allowed under the act. The average weekly wage was $18.74, and 60 per cent of this, the amount provided in the act, is $11.24 (subsection 3, § 42-1-64, R. S. 1933). One-half of this would be $5.62, or more than the allowance made by the Commission. We cannot assume,

therefore, that the Commission did not, in fact, in fixing the award at $4, follow the statute and make it one-half of what it would have been if the beneficiary had not been an alien. It would probably avoid situations like this if the Commission would make findings of benefits as in the case of a resident and then order only one-half thereof paid to the beneficiary who it is found is an alien, residing outside of the United States and Canada.

The order and award of the Industrial Commission is therefore set aside, and the cause remanded to the Commission for such further proceedings as are in harmony with this opinion.

FOLLAND, C. J., and HANSON, MOFFAT, and WOLFE, JJ., concur.