GOLLER, by Guardian *ad litem,* Appellant, v. WHITE and another, Respondents.*

*June 4—June 28, 1963.*

* Motion for rehearing denied, with $25 costs, on October 1, 1963.

404

For the appellant there was a brief by *Holden & Peckham* of Sheboygan, and oral argument by *Verlin H. Peckham*.

For the respondent White there was a brief by *Clemens, Miller, Hayes & Werner* of Sheboygan, and *William G. Mooney* of Plymouth, and oral argument by *John M. Hayes*.

For the respondent Farmers Mutual Automobile Insurance Company there was a brief by *Humke, Poole & Axel* of Sheboygan, and oral argument by *John M. Poole*.

CURRIE, J. The issues for decision on this appeal are:
(1) Was any coverage afforded plaintiff by the policy issued by Farmers Mutual to White?

(2) Is a person who stands *in loco parentis* to a minor immune from suit by the minor to recover for personal injuries grounded upon negligence?

The trial court's determination, that the instant policy was not an automobile policy and, therefore, that the action could not be maintained against Farmers Mutual until judgment was first recovered against White, was made prior to our decision in *Snorek v. Boyle* (1962), 18 Wis. (2d) 202, 118 N. W. (2d) 132. In that case we held (1) that the type of policy is immaterial in deciding whether a direct action can be maintained against the issuing insurance company, and (2) that if coverage is extended thereby to a farm tractor while operating on a public highway, then it is a "motor vehicle" within the meaning of secs. 204.30 (4) and 260.11 (1), Stats. Therefore, whether or not the judgment that dismissed the complaint against Farmers Mutual can be sustained necessarily turns on whether or not there was coverage under the policy.

### Coverage Under the Policy.

A copy of the policy is attached to Farmers Mutual's answer. It is labeled a "Farmers Liability and Medical Payments Policy" and, subject to the exclusionary clauses, affords coverage with respect to White's farming operations on two described farms in Sheboygan county. This coverage is extended to two classes of persons: The general public under insuring agreements AB and C; and farm employees under insuring agreements AB (1) and C (1).

The first applicable exclusionary clause reads as follows:

"This policy does not apply: (c) Under coverages AB and C . . . to bodily injury . . . of (1) any insured or any member of his family residing in the household of any insured . . . ."

As previously noted, coverages AB and C relate to the general public and not to White's employees because the

latter are specifically covered under insuring agreements AB (1) and C (1).

An "insured" is defined in the policy as follows:

"The unqualified word 'insured' includes (a) the named insured [and] (b) if residents of his household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of an insured, . . ."

Plaintiff was about twelve years old at the time of the accident. Legal custody of plaintiff, which included his care, was vested in the Milwaukee county welfare department. When this agency licensed White's home as a foster home and placed plaintiff in that home, it delegated plaintiff's care to White. Thus, under the above-quoted definition, plaintiff was "in the care of" the named insured, White, and therefore an additional insured under the policy. Thus Exclusion (c) precludes any coverage to plaintiff as a member of the public under insuring agreements AB and C.

Plaintiff's complaint alleges that on the date of the accident he was performing services for White on his two farms. Thus plaintiff contends that he was afforded coverage as an employee under insuring agreements AB (1) and C (1). With respect to this contention, Farmers Mutual relies on the following exclusionary clause:

"This policy does not apply: (f) Under coverages AB (1) and C (1), to bodily injury . . . of . . . (4) if regularly residing in the insured's household, any relative or member of the family of an insured, even if working as an employee, unless specifically named in the declarations and included in the number of employees used in determining the premium; . . ."

Plaintiff is not named in the declarations in the policy. Thus this exclusion barred his coverage as a farm employee if he was a member of White's family at the time of the accident. The learned trial court determined that plaintiff

was a member of White's family. We quote with approval from the trial court's memorandum opinion as follows:

"The petition for the appointment of a *guardian ad litem* for the plaintiff states that he was then a minor 12 years of age, and the briefs of counsel state that at the time of the accident in question he was about 11½ years of age. It appears from the supplemental stipulation that he was living in the home of the defendant James J. White as a foster child, having been placed in said home by the Milwaukee County Department of Public Welfare, and the home of said James J. White was a licensed foster home at all times material herein. Under these facts and the terms of the policy, I am of the opinion that the plaintiff was a member of the family of James J. White, the named insured, within the meaning of the policy provisions. The county welfare department had the legal custody of the plaintiff child. They delegated that legal custody to James J. White when they licensed his home and placed the child in his home. Legal custody means the right to the care, custody and control of a child and the duty to provide food, clothing, shelter, ordinary medical care, education and discipline for a child. Section 48.02 (10), Stats. One who is possessed of those rights and duties possesses and exercises the rights and duties of a parent and the relationship existing, is, for all practical purposes, that of parent and child. The very purpose in licensing a foster home and placing a child therein is to supply the parental and family relationship to a dependent, neglected or delinquent child. It is not necessary that one be a blood relative in order to be a member of a family. *Duluth-Superior Milling Company v. Industrial Commission* [1937], 226 Wis. 187 [275 N. W. 515, 276 N. W. 300]; *Armstrong v. Industrial Commission* [1915], 161 Wis. 530 [154 N. W. 844]. There are many cases in other jurisdictions holding to the same effect. See *Schurler v. Industrial Commission* [1935], 86 Utah 284, 43 Pac. (2d) 696; *Fifth Avenue Estates, Inc. v. Weaver* [1959], [16 Misc. (2d) 236], 185 N. Y. S. (2d) 164, 165; *Blachley v. Laba* [1884], 63 Iowa 22, 18 N. W. 658; *Dhonau v. Striebinger* (Ohio [1904]), 24 Cir. Ct. Repts. (N. S.) 598; *DeRoller v. Bohan* [1924], [211 App. Div.

46], 207 N. Y. S. 513, 516; *L. J. Mueller Furnace Co. v. Dreibelbis* (Mo. [1921]), 229 S. W. 240, 241.

"In *Utah Fuel Co. v. Industrial Commission of Utah* [1937], 91 Utah 491, 64 Pac. (2d) 1287, the Utah court held, under terms of the Compensation Act dealing with dependency on deceased employee, that the term ' "member of the family," means one whom the head of the family has taken into his home, to live with him, to share such comforts as the home may afford, and toward whom the head has assumed an attitude of parent, guardian or caretaker, to whom he owes the obligation of assistance, maintenance and support.' "

In view of the foregoing there was no coverage afforded plaintiff by the policy either as a member of the general public or as White's employee. Therefore, the judgment dismissing the complaint as against Farmers Mutual must be affirmed.

### Liability of Defendant White.

The trial court held that White stood *in loco parentis* to plaintiff, and, therefore, that White could not be held liable in negligence to plaintiff, citing *Wick v. Wick* (1927), 192 Wis. 260, 212 N. W. 787, and *Schwenkhoff v. Farmers Mut. Automobile Ins. Co.* (1960), 11 Wis. (2d) 97, 104 N. W. (2d) 154. The *Wick* and *Schwenkhoff Cases* represent the great weight of authority in this country although there is a growing tendency to depart therefrom. Anno. 19 A. L. R. (2d) 423.

The rationale of *Wick v. Wick, supra,* that a child may not sue his parent for negligence, was that a contrary holding would introduce discord and contention into the family relationship. The court noted that the family relationship might also be disrupted by permitting a wife to sue her husband for negligence as was upheld in *Wait v. Pierce* (1926), 191 Wis. 202, 209 N. W. 475, 210 N. W. 822.

The holding in the latter case, however, was distinguished on the ground that it rested upon statute, *i.e.*, the Married Women's Act. Nevertheless, as Prosser, Law of Torts (2d ed.), p. 677, sec. 101, points out, "no shadow of a difference in principle or policy . . ." exists between the two situations. We can now look back on more than thirty-five years' experience in the matter of spouses' suing each other in negligence cases. This experience causes us to doubt that the rule of *Wait v. Pierce, supra,* has tended to promote family discord. Because of this experience, we doubt that permitting a child to sue his parent for negligence would have any disruptive effect on family harmony.

At common law, suits are maintainable between child and parent concerning property and contract rights. *Preston v. Preston* (1925), 102 Conn. 96, 128 Atl. 292; *Lamb v. Lamb* (1895), 146 N. Y. 317, 41 N. E. 26; *Hollingsworth v. Beaver* (Tenn. Ch. App. 1900), 59 S. W. 464; *King v. Sells* (1938), 193 Wash. 294, 75 Pac. (2d) 130; Note, 33 St. John's Law Review (1959), 310, 312; Note, 51 Harvard Law Review (1938), 1451. In McCurdy, Torts Between Persons in Domestic Relation, 43 Harvard Law Review (1930), 1030, 1075, the author points out that it is common knowledge that some of the most-acrimonious family disputes arise with respect to property. Furthermore, it is difficult to argue that the law should protect the property rights of a minor more zealously than the rights of his person. Comment, 41 Marquette Law Review (1957), 188, 195.

The courts' hostility to the parental-immunity rule in negligence cases is shown by the exceptions which have been carved out of it. The Missouri court recently held that the rule did not apply to a suit brought by the child against the personal representative of a deceased parent. *Brennecke v. Kilpatrick* (Mo. 1960), 336 S. W. (2d) 68. Other cases in accord are: *Palcsey v. Tepper* (1962), 71

N. J. Super. 294, 176 Atl. (2d) 818, and *Davis v. Smith* (D. C. Pa. 1954), 126 Fed. Supp. 497. Another exception recognized by some courts arises where the parent's tort constitutes wilful misconduct. *Emery v. Emery* (1955), 45 Cal. (2d) 421, 289 Pac. (2d) 218; *Wright v. Wright* (1952), 85 Ga. App. 721, 70 S. E. (2d) 152; *Mudd v. Matsoukas* (1956), 7 Ill. (2d) 608, 131 N. E. (2d) 525; *Mahnke v. Moore* (1951), 197 Md. 61, 77 Atl. (2d) 923; *Harbin v. Harbin* (1961), 218 N. Y. Supp. (2d) 308, affirmed, 16 App. Div. (2d) 696, 227 N. Y. Supp. (2d) 1023; and *Cowgill v. Boock* (1950), 189 Or. 282, 218 Pac. (2d) 445, 19 A. L. R. (2d) 405. The courts of Ohio and Washington have held that the parental-immunity rule does not apply if the parent was engaged in his business or occupation at the time he committed the negligent act. *Signs v. Signs* (1952), 156 Ohio St. 566, 103 N. E. (2d) 743, and *Borst v. Borst* (1952), 41 Wash. (2d) 642, 251 Pac. (2d) 149.

1 Harper and James, Law of Torts, p. 650, sec. 8.11, advocates allowing the maintenance of an action in tort against a parent or a child in every case "in which it is reasonably clear that the domestic peace has already been disturbed beyond repair or where by reason of the circumstances it is not imperiled, and where the reasonableness of family discipline is not involved." The authors point out that one situation in which family harmony is not thereby disturbed arises where there is liability insurance coverage. Id., p. 649. Two courts have grounded recovery by a minor child against a parent upon the existence of insurance. *Worrell v. Worrell* (1939), 174 Va. 11, 4 S. E. (2d) 343, and *Lusk v. Lusk* (1932), 113 W. Va. 17, 166 S. E. 538. See also *Dunlap v. Dunlap* (1930), 84 N. H. 352, 150 Atl. 905.

This court, however, has refused to consider the existence of liability insurance a sufficient basis for departing from

the rule of *Wick v. Wick, supra. Lasecki v. Kabara* (1940), 235 Wis. 645, 294 N. W. 33, 130 A. L. R. 883; and see also *Fidelity Savings Bank v. Aulik* (1948), 252 Wis. 602, 32 N. W. (2d) 613. This accords with many decisions from other states that the mere fact that the particular defendant-parent is protected by liability insurance does not enable his minor child to maintain an action when, in the absence of such insurance, he could not otherwise maintain it. Anno. 19 A. L. R. (2d) 423, 435, 436. Nevertheless, we consider the wide prevalence of liability insurance in personal-injury actions a proper element to be considered in making the policy decision of whether to abrogate parental immunity in negligence actions. This is because in a great majority of such actions, where such immunity has been abolished, the existence of insurance tends to negate any possible disruption of family harmony and discipline.

This court seriously considered the advisability of abrogating the parental-immunity rule in negligence actions when *Schwenkhoff v. Farmers Mut. Automobile Ins. Co., supra,* was before us. We then concluded that the legislature's recent action in rejecting legislation that would have abolished the immunity foreclosed this court from so doing. In so concluding we adhered to the long-established judicial policy of not overruling our past decisions where the legislature had acted in the matter. This included the situation where the legislature had defeated a bill that had proposed changes in a rule of law laid down by court decision. Subsequently, this policy was completely overturned in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618. We there held that it was our responsibility to change a court-made rule of law when we deemed the change necessary in the interests of justice even though the legislature had refused to make the change. Thus the reason advanced

in the *Schwenkhoff Case* for not changing the parental-immunity rule no longer applies.

After a careful review of the arguments for and against the parental-immunity rule in negligence cases, we are of the opinion that it ought to be abrogated except in these two situations: (1) Where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. Accordingly, the rule is abolished in personal-injury actions subject to these noted exceptions. Thus as against White, plaintiff's complaint states a cause of action which was not negatived by any affidavit submitted by White in support of his motion for summary judgment.

*By the Court.*—The judgment of September 5, 1962, is affirmed; the judgment of November 14, 1962, is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

BROWN, C. J. (*concurring*). I concur in the decision that the insurance policy does not give coverage to White in this accident.

I concur in the result that White is not immune from liability to the infant Goller for the results of White's negligence but that is because I do not believe that the circumstances of Goller's residence in White's household have created parental relationship. I would not extend to White the immunities possessed by a true parent.

I disagree with the decision of the majority that even a parent shall no longer have the immunity recognized by law for many years. This change, resting upon the court's conception of desirable public policy is subject to very

strong arguments for not changing the retention of the time-honored parental immunity.

The majority of the court say that there is no difference in principle between the right of action by a wife against her husband, a right presently recognized, and a similar right of action by a child against its parent, a right which the court now says ought to be and now will be recognized. When the legislature considered that public policy made advisable rights of action by wives against their husbands the legislature stated that right by statute. Till then this court refrained from announcing a public policy in this field primarily coming within the legislative function. See *Wait v. Pierce* (1926), 191 Wis. 202, 209, 209 N. W. 475, 210 N. W. 822, cited by the majority. I think the court should do now as our predecessors did and leave the business of the legislature to that august body.

Therefore, while affirming the result reached by the majority in this case, I believe the authority of *Wick v. Wick* (1927), 192 Wis. 260, 212 N. W. 787, should be retained until the legislature has spoken.

The following was filed July 9, 1963:

*Supplemental Opinion.*

Currie, J. Our original opinion abolished the rule of parental immunity in negligence actions subject to the exceptions noted. The effect of this change of rule was not limited to cases arising in the future. Since the filing of that opinion, the court has given further consideration to whether such abolishing of the rule should be made prospective as was done in *Widell v. Holy Trinity Catholic Church* (1963), 19 Wis. (2d) 648, 121 N. W. (2d) 249; *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618; and *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 107 N. W. (2d) 131, 107 N. W. (2d) 292.

We have concluded that there are compelling reasons for making this change in existing law prospective only. Therefore, the change in the rule of parental immunity announced in our original opinion is to be limited to causes of action arising on or after June 28, 1963, the date of the filing of such original opinion, except that it is to be applicable to the instant case.

---

\* Motion for rehearing denied, with $25 costs, on October 1, 1963.