MARIE MEYLER *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 68, October Term, 1940.]

212

*Decided January 29th, 1941.*

The cause was argued before BOND, C. J., SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Paul Berman,* with whom were *Edwin J. Wolf, Harry B. Wolf, Jr.,* and *Theodore B. Berman,* on the brief, for the appellant.

*Hector J. Ciotti, Assistant City Solicitor,* with whom was *Charles C. G. Evans, City Solicitor,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The question in this case is whether Marie Meyler, appellant, was a dependent of Michael Gibbons, her stepfather, at the time he sustained a fatal injury in the course of his employment by the Mayor and City Council of Baltimore, appellee. The Superior Court of Baltimore City, affirming an order of the State Industrial Accident Commission, held that she was not a dependent within the meaning of the Workmen's Compensation Act of Maryland.

Gibbons was injured on May 1st, 1939, while working for the Street Cleaning Department of Baltimore City, and died as a result of the injury on June 2nd, 1939. At the hearing of the claim of the widow, Gertrude Gibbons, before the Commission on September 7th, 1939, the appellant, then forty years of age, testified that her father died when she was six years old, and that she started to work in a paper box factory at the age of fourteen. After her mother married Gibbons, the three lived together. In April, 1937, she gave up her job at the factory, in accordance with the wish of her stepfather, to take care of her invalid mother and the home. Miss Meyler testified: "He asked me to stay home, and he would see that I was taken care of." He did not pay her a salary, but he gave eighteen dollars a week for the expenses of the household. She said that from this allowance she bought her clothes and had whatever spending money she needed. She declared that she was wholly dependent upon her stepfather for support at the time of his accident. On September 22nd, 1939, the Commission awarded compensation to the widow, payable at the rate of $13.20 per week, not to exceed $5000, and also allowed $125 for funeral expenses. Code, art. 101, secs. 48, 49. The award was affirmed after a trial before a jury in the Baltimore City Court.

On March 12th, 1940, Mrs. Gibbons died; and on May 22nd, 1940, her daughter petitioned the Commission to reopen the case to determine whether she was a dependent of her deceased stepfather and thus entitled to receive the balance of the compensation due under the award. She explained that she did not join in the original claim after his death because she relied upon her mother for support at that time. However, she complied with the requirement of the statute that whenever death results from an injury the parties entitled to compensation, or some one in their behalf, shall make application for the same within one year from the date of death. Code, art. 101, sec. 51. There is nothing in the statute which requires that all of the dependents of a deceased employee shall be ascertained and determined at the time any dependent's application is considered. If a dependent who has been awarded compensation dies before the full amount has been paid, and a petition is duly filed by another claimant for the unpaid balance, it then becomes the duty of the State Industrial Accident Commission to determine for the first time whether the new claimant was a dependent of the deceased employee, and in deciding that question the Commission must look at the conditions as they existed at the time of the injury. *Community Baking Co. v. Reissig,* 164 Md. 17, 23, 164 A. 176, 179. The Commission denied the daughter's claim, and ordered the payments of compensation to cease as of March 12th, 1940.

On her appeal from the order of the Commission, Miss Meyler presented two issues: (1) Was she "wholly dependent" upon her stepfather at the time of the accident? and (2) If not, was she "partially dependent" upon him? The trial judge, after the testimony had been read, directed the jury to answer "No" to both issues. He said that, even assuming all the testimony to be true, she could not be a dependent, either wholly or partially, within the meaning of the statute. She is now appealing from the judgment of the Superior Court affirming the order of the Commission.

While the Workmen's Compensation Act does not define the term "dependent," it declares that the following persons shall be presumed to be wholly dependent for support upon a deceased employee: (1) a wife, (2) an invalid husband, and (3) a child or children under the age of 16 years, or over said age if incapacitated from earning, living with or dependent upon the parent at the time of the injury or death. The Act then provides: "In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in death of such employee, but no person shall be considered as dependent unless such person be a father, mother, grandfather, grandmother, stepchild, or grandchild, or brother or sister of the deceased employee, including those otherwise specified in this Section." Code, art. 101, sec. 48.

Thus, according to the express direction of the Legislature, the question whether a stepchild of an employee should be adjudged a dependent must be determined from the circumstances of the case as they existed at the time of the injury. A "dependent" under the Workmen's Compensation Law may be generally defined as one who is relying wholly or in part upon a workman for the reasonable necessities of life at the time of the workman's accident. *Grant v. Kotwall,* 133 Md. 573, 577, 105 A. 758, 760; 12 *Words and Phrases,* Permanent Edition, 88-124. In order to establish dependency, an applicant for compensation must show that there was reasonable ground to expect continuing support from the workman; that is to say, there must be not only an obligation to support, but also a reasonable probability that the obligation will be fulfilled. *State Industrial Accident Commission v. Downton,* 135 Md. 412, 416, 109 A. 63, 65; 28 *R. C. L., Workmen's Compensation Acts,* sec. 65. But when the death of an employee ensues from an injury, the right of a dependent to compensation becomes fixed as of the date of the injury, irrespective of any subsequent change of conditions. *Miller v. Riverside Storage & Cartage Co.,* 189 Mich. 360, 155 N. W. 462.

It was contended by counsel for the City that Miss Meyler was merely a maid and nurse for her mother under a contract. We are unable to accept that contention. We have already held in this court that where an employee turned over his earnings to his sister to buy the supplies for the home, and the sister did the housework and had no other employment or means of support the evidence was legally sufficient to show that she was a dependent under the statute. *Mech v. Storrs,* 169 Md. 150, 179 A. 525. Likewise, in Indiana, where a workman turned over his earnings to his sister to pay the household expenses, and told her not to worry over her situation as he would furnish her a home as long as possible, the court held that she was not serving under a contract of employment, and could not be deprived of compensation merely because she might have been able to support herself as a stenographer, since the testimony showed that she was in fact dependent upon him for support. The court stated in its opinion: "It is apparent that the deceased supported his sister * * * in recognition of a moral, if not a legal obligation to support her, in accordance with the promise made, when he induced her to remain in the home as housekeeper, and thereby become a nonproducer. And if she relied on such obligation and promise, such facts are sufficient to create a relationship of dependency, as a basis for compensation. * * * The fact that the sister remained in the home * * * under an arrangement or understanding that the deceased was to furnish the home and provide for his sister, and in return therefor she was to act as his housekeeper, does not show such a contractual relation as to deprive her of compensation as a dependent. Such fact does not show a contractual rather than a family relation. It is quite natural in all family relations not imposed by law that there be an understanding or an arrangement as to the division of labor, contribution of funds, and performance of duties, in the support of the family and maintenance of the home." *In re Lanman,* 65 Ind. App. 636, 117 N. E. 671, 672.

It was also contended that in the Indiana case the housekeeper had lost her health as a result of her duties in nursing her mother and sister and consequently would have been unable to work outside the home, while in this case the housekeeper had good health and could have supported herself, and therefore should not be classified, as a dependent. But mere ability to earn a livelihood does not necessarily preclude a person from being a dependant, the test of dependency, as a general rule is not whether a claimant was capable of supporting himself without the earnings of the workman, but whether he did in fact rely upon such earnings for his livelihood, in whole or in part, under circumstances indicating an intent on the part of the workman to furnish such support. *Gonzales v. Chino Copper Co.*, 29 N. M. 228, 222 P. 903, 905. For example, where two unmarried women were supported by their father in his home in Kentucky, it was held that it was unnecessary to inquire into the expediency of the arrangement which the father had made, as they should be considered dependents regardless of their ages and the causes of their dependency. *Sunfire Coal Co. v. Day*, 267 Ky. 716, 103 S. W. 2nd 82. Many of the courts, however, have recognized, as a qualification of the general rule, that a claimant should not be regarded as a dependent in case he failed to use all the resources reasonably available to him, including the ability to work, to support himself under all the circumstances of the case. There must be a reasonable need on the part of the claimant as well as a recognition of that need by the workman. *Morrill v. Charles Bianchi & Sons*, 107 Vt. 80, 176 A. 416, 421; *Bortle v. Northern Pacific Ry. Co.*, 60 Wash. 552, 111 P. 788, 789. But there is no provision in the statute requiring that a person must be incapable of supporting himself before he can be dependent, and there is no reason to hold that dependency should be so restricted in its meaning. *Utah Galena Corporation v. Industrial Commission*, 78 Utah, 495, 5 P. 2nd 242, 244. Accordingly, it is well established that when a condition of de-

pendency results from an agreement whereby the claimant agreed to act as housekeeper for the workman, she cannot be deprived of compensation because she might have been able to support herself elsewhere. *Blanton v. Wheeler & Howes Co.*, 91 Conn. 226, 99 A. 494, 496; 2 *Schneider, Workmen's Compensation Law*, 1258; 71 *C. J., Workmen's Compensation Acts*, sec. 273; 28 *R. C. L., Workmen's Compensation Acts*, sec. 66.

When a similar question arose in Massachusetts in a case wherein a workman's daughter had received practically all his wages for keeping his house, the Supreme Judicial Court declared that the Industrial Accident Board should have based its conclusions on the facts as they existed, and not on "what might have been the case if her sense of filial duty had been weaker." Although she might have continued "to earn enough for her own support, and to be independent of him," if he had not needed her care, the Court held that such a fact was not "decisive as matter of law against her claim." *In re Herrick*, 217 Mass. 111, 113, 104 N. E. 432, 433. Some years later the same court, in referring to the *Herrick* case, said: "In that case there was testimony to the effect that the claimant, a daughter to the employee, remained at home to take care of her father and performed services for him as his housekeeper because she thought he needed her care. In substance, it was held that the conclusion was justified that she had such reasons, practical as well as sentimental, for giving up her work and remaining at home, that her ability to work was not to be regarded as a resource reasonably available for her own support." *Ferriter's Case*, 269, Mass. 267, 168 N. E. 747, 748. In another case in Massachusetts, in which a workman persuaded his sister to take charge of his home and had promised to furnish the money necessary to maintain it and also to buy her clothes and give her whatever money she needed, the court said that although the workman made regular payments to her sister according to the promise he had made when he induced her to become a nonproducer, nevertheless the contention that he had

employed her under "a contract for wages" was unwarranted. *Kenney v. City of Boston,* 222 Mass. 401, 111, N. E. 47, 48.

The same rule has been followed by the Supreme Court of Wisconsin. When it appeared in that State that an unmarried woman 51 years old had been attending to her father's home and she had been supported by him, it was held that upon his death from an accidental injury she was entitled to compensation as his dependent within the meaning of the statute, even though "she was in good health, and undoubtedly could have earned her support elsewhere." *Janesville Sand & Gravel Co. v. Industrial Commission,* 197 Wis. 421, 222 N. W. 317.

We, therefore, hold that there was legally sufficient evidence to justify submission of the case to the jury on the questions of total and partial dependency. The credibility and weight of the testimony of witnesses are matters for the consideration of the jury. It appears from the record that only the testimony of the claimant and her mother was offered in the court below. The testimony at a trial on an appeal from the State Industrial Accident Commission is not confined to the testimony taken before the commission, but each side has the right to call its witnesses to support its case. Code, art. 101, sec. 70; *R. H. Fraizer & Son v. Leas,* 127 Md. 572. 575, 96 A. 764, 766; *American Ice Co. v. Fitzhugh,* 128 Md. 382, 385, 97 A. 999, 1000. We reverse the judgment affirming the order of the Commission and award a new trial.

> *Judgment reversed, and new trial awarded, with costs.*