PERRY *et al. v.* SUN COAL Co.

(*Knoxville,* September Term, 1945.)

Opinion filed December 1, 1945.

142

Joe M. Agee, of LaFollette, for plaintiff in error (plaintiff below).

Sam K. Carson, of Clinton, for defendant in error.

Mr. Justice Neil delivered the opinion of the Court.

This is a suit under the workmen's compensation statute, Code 1932, Sec. 6851 *et seq.*, and the only issue before us is whether or not the appellant was the lawful and dependent wife of Otis Perry at the time of his death.

The suit was instituted by .Mrs. Gladys Perry and Donald Ray Perry against the defendant Sun Coal Company. It is alleged that the petitioners are the wife and son, respectively, of the deceased Otis Perry, who was an employee of the defendant when he was killed, and that they "were both dependent upon the earnings of said Otis for a livelihood."

The defendant admitted the material averments in the petition, but denied that petitioner was the widow of the deceased.

The case was heard by the trial judge upon a stipulation of facts. The court held that Donald Ray Perry was entitled to compensation, but that Gladys Perry was not because her marriage to the deceased was bigamous. From this judgment she has appealed and assigned the following error:

"The Court erred in holding that the appellant Gladys Thomas Perry was not entitled to a recovery against appellee, Sun Coal Company, and rendering a decree against her because she had not remarried the deceased

after he had obtained a divorce from his former wife. The Court should have held that the appellant Gladys Thomas Perry believed that her marriage to the deceased was a valid marriage, and that a second marriage or re-marriage after deceased's divorce was obtained was not necessary.''

Stipulation of Facts

(1) That the deceased Otis Perry was married to one Flossie Perry on December 6, 1932. They lived together only a short time.

(2) Subsequently, without obtaining a divorce, he married one Ida Powell and lived with her until the latter's death in January, 1942. There was born to Ida Powell Perry a son, Donald Ray Perry, who is now about five years old.

(3) Following the death of Ida Powell Perry, and before obtaining a divorce from Flossie Perry (the first wife), the deceased Otis Perry went through a marriage ceremony with the present petitioner, Gladys Thomas Perry. This was on May 6, 1942.

(4) That the deceased Otis Perry, subsequent to his marriage to petitioner, Mrs. Gladys T. Perry, obtained a divorce from the said Flossie Perry on the 3rd day of September, 1943.

(5) That all the time from May 6, 1942, he lived with the said Gladys Thomas Perry in Campbell County, Tennessee, held herself out his lawful wedded wife, and that deceased supported her as such and also supported the said Donald Ray Perry, his son, and that both the said Gladys Thomas Perry and Donald Ray Perry were living with him and supported by him at the time of his death on November 11, 1943.

Other facts are stipulated which are not relevant to the question presented on this appeal.

The petitioner testified she was only fifteen years old when she married the deceased on May 6, 1942, and lived with him and was supported by him as his lawful wife until his death. That they were married by a minister of the Gospel; that she stayed in the home of deceased and his wife Ida Powell Perry, and following her death she and deceased were married. That several months after she was married, she was told by a cousin that Otis Perry had never been divorced from his first wife Flossie Perry; that she at once asked Otis about it and he admitted it was true; that this was the first she knew that deceased was ever married to Flossie Perry; that as soon as her husband could get a pay day they went to Kentucky to get a divorce for Otis; that Otis went to see an attorney and "she thought he had got his divorce on that date, and never knew any difference until Otis died." The divorce was granted several months prior to the death of Otis Perry.

The petitioner further testified that after she thought the divorce was granted from Flossie Perry, she did not remarry Otis Perry because "she did not know it was necessary"; that she continued to live with him as his wife without remarrying him; that she thought she was his lawful wife after the divorce was granted; "that she held herself out as being a lawful and wedded wife and she was so accepted by her friends at the place where she and deceased lived."

The co-petitioner Donald Ray Perry is now living with a cousin of his deceased father Otis Perry.

We think the learned trial judge was in error in holding that the petitioner Gladys Perry could not recover compensation on the ground that her marriage to deceased was unlawful, it being a bigamous marriage. The right of the wife to recover compensation for the

accidental death of the husband, where she was not lawfully married to him, was considered in *Kinnard* v. *Tennessee Chemical Co.*, 157 Tenn. 206, 7 S. W. (2d) 807, and *Summers* v. *Tennessee Eastman Corp.*, 169 Tenn. 335, 87 S. W. (2d) 1005. In the first of these cases the deceased husband married the petitioner without disclosing his former marriage and failure to obtain a divorce. She believed herself to be the lawful wife of the deceased. In the second case, *Summers* v. *Tennessee Eastman Corp.*, the wife knew her husband had been previously married, but believed that he was divorced, and believed herself to be his lawful wife. Now in both of these cases the marriage was bigamous in that the deceased had a living wife. In passing upon the right of the wife, or widow, to compensation it was held that the purpose of the compensation statute was to provide for dependents of deceased workmen; that dependency is the true basis of the right ''rather than blood or marriage.''

While dependency is the proper basis upon which to determine the right to recover compensation, we think, the relationship between the wife and her husband must not be knowingly adulterous. In other words, if they live together with full knowledge of the fact that their relationship is meretricious, the dependency results from an unlawful association and death is not compensable. Our cases seem to give consideration to circumstances attending the nature of the relationship, whether it is adulterous, or one that is founded upon respect for good morals and common decency. Where a man and wife live together through an honest though mistaken belief that they are married, it is said that ''such belief and consequent want of intent relieve the act of its criminal character, as in such case public decency is not outraged

and common morality is not defied." 1 Am. Jur., Adultery, Sec. 18, p. 689.

In the *Kinnard case* the wife never knew her deceased husband had another wife until after his death. In the *Summers case* the wife had every reason to believe her husband was divorced. It thus appears that technically the marriage in both cases was bigamous, but it was held to be an honorable relationship, and the wife being a dependent was entitled to compensation.

We think the wife in the instance case is pretty much in the same situation. She never knew the deceased had been married to Flossie Perry. She had stayed in his home when he was thought to be lawfully married to Ida Powell Perry, knew he had a child by Ida, and upon Ida's death was formally united in marriage to the deceased. When she learned that he had never been divorced from Flossie, she importuned him to get a divorce, which he did.

We do not think the fact that she did not remarry Otis Perry after the divorce was granted precludes her right to recover compensation as a dependent. She was recognized by deceased as his lawful wife; she was dependent upon him for support. The mere fact that his marriage was technically bigamous cannot be interposed as a defense in this case. Her relationship with the deceased from the time the divorce was granted until his death was that of a lawful wife. It was not necessary that they should procure a second marriage license and formally remarry in order to constitute her a lawful dependent under our compensation statute.

In *Chamberlain* v. *Chamberlain*, 68 N. J. Eq. 736, 62 A. 680, 3 L. R. A. (N. S.), 244, 111 Am. St. Rep. 658, 6 Ann. Cas. 483, it was held:

"When a man and a woman intend to marry and live

together as husband and wife, but their intent is frustrated by the existence of some unknown impediment, when the impediment is removed and it is shown that the same intent continues, their relations are lawful.''

The annotator cites our own case of *Cole* v. *Cole,* 37 Tenn. 57, 70 Am. Dec. 275, in which it was held that the marriage of a lunatic, though void at the time, becomes valid by cohabitation after the mind is restored; referring to 1 Bishop on Marriage and Divorce, 142, as authority. See also *Warwick* v. *Cooper,* 37 Tenn. 659.

The assignment of error is sustained and the case is remanded for the determination of the amount of compensation due respectively to the son, Donald Ray Perry, and the appellant Gladys Thomas Perry.