47 So.2d 114 (1950)
EASON
v.
ALEXANDER SHIPYARDS, Inc., et al.
No. 19514.
Court of Appeal of Louisiana, Orleans.
June 21, 1950.
*115 Deutsch, Kerrigan & Stiles, New Orleans (Marian Mayer, New Orleans, of Counsel), for defendants and appellants.
Philip R. Livaudais and Robert U. Blum, New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
This is a suit in which Bertha Mackey Eason, individually and as natural tutrix for her two minor children, Walter Andrew Eason and Alfred Oliver Eason, claims death benefits under the Workmen's Compensation Act, Act No. 20 of 1914, as amended, for the accidental death of Logan James Eason, which occurred on June 17, 1947, while he was performing services arising out of and in the course of his employment by Alexander Shipyards, Inc. The petition styles the claimants as the *116 dependent widow, children, and "members of the family" of Logan James Eason. The suit is directed against the said employer and its compensation insurance carrier, The Employers' Liability Assurance Corporation, Ltd.
Bertha Mackey Eason first filed claim under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., which was tried before a Deputy Commissioner of the Federal Security Agency, Bureau of Employee's Compensation, who held that the claim did not arise under the Longshoremen's and Harbor Workers' Act, and declined jurisdiction of the matter. The instant suit followed.
Logan James Eason was the illegitimate child of Estelle Williams, and she, individually and for the use and benefit of the minor, Lilly Mae Eason, who is the illegitimate daughter of Logan James Eason, issue of a union with one Aline Wright, also instituted suit against the same defendants for death benefits under the Workmen's Compensation Act, as dependent members of the family of Logan James Eason.
The two cases were consolidated and tried together. Bertha Mackey Eason, individually and on behalf of her children, recovered judgment against both defendants for 300 weeks compensation at the rate of $19.50, plus an allowance of $100 for burial expenses. The suit of Estelle Williams and Lilly Mae Eason was dismissed. This appeal was taken by defendants, insofar as the judgment awards compensation to Bertha Mackey Eason and her two children. Estelle Williams and Lilly Mae Eason have not appealed, and their claim, therefore, is not before us.
The defendants admit the employment, the accident, and the ensuing death of Logan James Eason, and that his average weekly wage was $30. The suit is defended solely upon the ground that Logan James Eason contracted a bigamous marriage with Bertha Mackey Eason, and "that petitioners are neither the widow nor the children of the decedent within the meaning of those terms as contemplated by the Louisiana Workmen's Compensation Act."
The undisputed facts of the case, as reflected by the record, are that Eason, a colored man, married a woman named Elizabeth Terry in Arkansas on August 10, 1940, and lived with her there for several months. They separated, and Eason eventually left Arkansas and came to New Orleans in January, 1945. As late as December, 1945, Elizabeth Terry was still alive, and she and Eason had never been divorced.
Logan James Eason married Bertha Mackey in New Orleans on June 23, 1945, at a ceremony performed by Reverend A. Jackson, and the parties lived together in New Orleans until September, 1945, when they moved to the Village of Nairn, in Plaquemines Parish, where they remained until April, 1947. They then returned to New Orleans, took up residence there, and lived together as man and wife until Eason's death. The child Walter Andrew Eason was born at Nairn on May 12, 1946, and the second child, Alfred Oliver Eason, was born posthumously on November 14, 1947, about five months after Eason met his death.
Timely objection was made to the introduction of evidence on the part of Bertha Mackey Eason to prove that she occupied the status of a putative wife. The basis of the objection was that Bertha Mackey Eason alleged that she was the dependent "widow" of Eason, and that the proferred evidence would tend to an enlargement of the pleadings. We think, as the trial judge thought, that the evidence was proper and admissible, as it is the settled jurisprudence of this state that a woman, who was in good faith when she married, and remained so until her husband's death, is, as a putative wife, entitled to claim the benefits due a widow under the Workmen's Compensation Act. Jones v. Powell Lumber Co., 156 La. 767, 101 So. 135. See also Rollins v. Foundation Co., La.App., 154 So. 674, wherein a putative wife and her children were allowed to recover; and Fulton Bag & Cotton Mills v. Fernandez, La.App., 159 So. 339. The tendered evidence, in view of the defense contained in the answer, could not have *117 taken appellants by surprise, and it is our opinion that the allegation that she was the widow of Eason entitled Bertha Mackey Eason to show that her marriage with him was a putative one, and that in contacting the marriage, she was a contractant in good faith.
R.C.C. art. 117 declares: "The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
But, as provided by R.C.C. art. 118: "If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor and in favor of the children born of the marriage."
In the recent case of Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502, 504, it was said by the Supreme Court:
"The good faith referred to in these articles means simply the honest and reasonable belief that the marriage at the time of its confection was a valid one. Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Succession of Marinoni, 183 La. 776, 164 So. 797; Succession of Chavis, 211 La. 313, 29 So.2d 860; Howard v. Ingle, La. App., 180 So. 248. The burden of proving a charge of bad faith on the part of a marriage contractant rests squarely upon the person making the charge (Succession of Navarro, 24 La.Ann. 298; Macaluso v. Succession of Marinoni [178 La. 384, 151 So. 628]; Howard v. Ingle, supra), and if there be any doubt as to the good faith of the parties, it is to be resolved in favor of good faith. Jones v. Squire, 137 La. 883, 69 So. 733. The innocent party to a bigamous marriage is held to be in good faith so long as he or she has no certain knowledge of any impediment thereto. Patton v. Cities of Philadelphia & New Orleans, 1 La.Ann. 98; Ray v. Knox, 164 La. 193, 113 So. 814.
"As was very aptly pointed out in Succession of Chavis, supra (211 La. 313, 29 So.2d 863), what constitutes good faith `is not an absolute quality but is relative, and depends ultimately upon the facts and circumstances in each individual case.'"
Bertha Mackey Eason testified that at the time of her marriage to Eason she had no knowledge, or reason to suspect, that he was already a married man, and that the first notice of that fact came to her when she made claim for social security benefits after Eason's death. It appears that the officials of the Social Security Administration had learned of the previous marriage from Estelle Williams, who was also pressing a claim for social security benefits for herself and Eason's illegitimate child, Lilly Mae.
The only testimony impugning the good faith of Bertha Mackey Eason emanates from Estelle Williams, who, as has already been stated, sought recovery of death benefits under the Workmen's Compensation Act from the defendants as a dependent member of the family.
Previous to May, 1946, Estelle Williams lived in Arkansas with Eason's illegitimate child and another child she was "raising." She brought the two children to New Orleans in May, 1946, and on the day following her arrival took them to Nairn, and at all times thereafter the three, Estelle Williams and the two children, lived in the home of Bertha Mackey and Logan James Eason, up until the latter's death.
Estelle Williams says that she had never met Bertha before going to Nairn, and that she learned then for the first time that Bertha and Eason had married. She stated that prior to thus meeting Bertha, she entertained the belief that Bertha and Eason were merely living together. She claims that at some later date she told Bertha of Eason's first marriage, and showed her a picture of Elizabeth Terry. Bertha strenuously denies the truthfulness of this statement.
We are not at all impressed with Estelle Williams' testimony, for a reading of her cross examination shows that she could not remember the approximate time or date when she told Bertha of Eason's other wife, nor could she produce the picture of Elizabeth Terry which she maintained that she had shown to Bertha.
Understanding human nature as it is, we believe it improbable that Estelle Williams, *118 after learning of Eason's marriage with Bertha Mackey, would have told the latter of the previous marriage. Is it not reasonable to suppose that Estelle Williams remained silent, so as not to expose her son, with whom she was living and by whom she was being supported, to a possible prosecution for bigamy?
Appellants' counsel make much ado about a letter which Estelle Williams testified she wrote to Bertha Mackey and Logan James Eason in December, 1945. According to Estelle Williams' testimony, Elizabeth Terry visited her in Arkansas, and Estelle Williams wrote Bertha and Eason inviting them to come to Arkansas and spend the Christmas holidays with her, and meet Elizabeth. Bertha denies ever having received or seen such a letter.
It is our conclusion that appellants have not only failed to carry the burden of proving bad faith on the part of Bertha Mackey Eason, but the weight of the evidence establishes that she, in absolute good faith, contracted the marriage with Eason, and remained in ignorance of the true state of affairs until after his death, when there was a parting of the way between the two women, and the rival claims for social security and workman's compensation benefits developed. We share the view of the trial judge that he was "impressed with the testimony of Bertha Mackey Eason as she told the truth."
An interesting question, which has never hitherto been decided by an appellate court in this state, presents itself in this case. Do death benefits under the Workmen's Compensation Act accrue to a posthumous child from the date of the death of the employee, or from the date of the birth of the child?
Section 8 of Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 357, Act No. 120 of 1944, provides:
"1. That compensation shall be paid under this act in accordance with the following schedule of payments:

* * * * * *
"2. For injury causing death within one year after the accident there shall be paid to the legal dependents of the employee, * * * a weekly sum as hereinafter provided, for a period of three hundred weeks. * * *
"(A) The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee:
"(B) A wife upon a husband with whom she is living at the time of his accident or death.

* * * * * *
"(D) A child or children under the age of eighteen years (or over said age, if physically or mentally incapacitated from earning) upon the parent with whom he is, or they are, living at the time of the injury of such parent. * * *
"(E) Payment to such dependents shall be computed and divided among them on the following basis:

* * * * * *
"3. If widow or widower and two or more children, sixty-five per centum of wages.

* * * * * *
"(H) The term `child' or `children' shall cover only legitimate children, step-children, posthumous children, adopted children and illegitimate children acknowledged under the provisions of Civil Code Articles 203, 204 and 205. * * *"
R.C.C. art. 252 provides: "If a wife happens to be pregnant at the time of the death of her husband, no tutor shall be appointed to the child till after his birth; but, if it should be necessary, the judge may appoint a curator for the preservation of the rights of the unborn child, and for the administration of the estate which may belong to such child. At the birth of the posthumous child, such curator shall be of right the undertutor."
According to R.C.C. art. 954, a child in utero "* * * is considered as born for all purposes of its own interest; it takes all successions opened in its favor since its conception, provided it be capable of succeeding at the moment of its birth."
Under the codal articles, unborn children are endowed with certain vested rights, *119 provided that they be born alive. Such children are entitled to inherit, if conceived at the moment of the opening of the succession. R.C.C. art. 957. Unborn children have the capacity to receive donations inter vivos, it sufficing to be conceived at the time of the donation; they are also capable of receiving by last will, if conceived at the time of the decease, R.C.C. art. 1482.
The Legislature has declared that the term "child," as used in Section 8 of the Workmen's Compensation Act, shall include posthumous children, and there is no doubt in our minds that the framers of the act intended, in view of the provisions of the Civil Code which place unborn children, as to certain rights, on a parity with other children, to vouchsafe to an unborn child the same privileges and benefits under the act as are enjoyed by other children of the deceased workman. We think that it was the legislative intent that a child in utero, upon being born alive, would be entitled to the death benefits provided for in the act, the same to be computed from the time of the death of the deceased workman.
Appellants complain about the allowance of $100 for the expenses of the burial of Logan James Eason. It is contended that the petition contains no allegation that burial expenses were incurred. Counsel seem to be in error, for we find that in Article XIV of the petition, it is alleged that the funeral expenses for the preparation and burial of decedent's body amounted to $328.45, and the petitioner specifically prayed for an allowance of that amount. The act provides that in every case of death the employer shall pay or cause to be paid reasonable expenses of the burial of the employee, not exceeding $100. The evidence shows that the funeral bill amounted to more than that sum, and the allowance of $100 by the trial judge was proper.
For the reasons assigned, the judgment appealed from, insofar as it applies to the claim of Bertha Mackey Eason and her two minor children, is hereby affirmed.
Affirmed.
JANVIER, J., takes no part.