## KENDALL *v.* HOUSING AUTHORITY OF BALTIMORE CITY ET AL.

[No. 31, October Term, 1950.]

372

*Decided November 15, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Maurice J. Pressman,* with whom were *Schonfield & Schonfield* on the brief, for the appellant.

*Thomas G. Andrew* and *Walter R. Tabler, Jr.*, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The question presented in this case, arising under the Workmen's Compensation Act, is whether the claimant, who cohabited with the deceased workman for ten years prior to his fatal injury although not married to him, is legally qualified as a dependent upon a showing that she was in fact supported by him. Her claim was disallowed by the State Industrial Accident Commission, and its action was affirmed by the Court of Common Pleas, sitting without a jury.

The testimony disclosed that the claimant was married in 1907; her husband died in 1937 leaving her with five children. She met the deceased, John Daniels, in 1939. He had been divorced. He seems to have proposed marriage, but the appellant declined on account of religious scruples. There was no other impediment to the marriage. In any event, he moved to her apartment, where he occupied a couch and she prepared his meals. Subsequently they moved to another apartment and then to a house which he had purchased; she gave up her job as a telephone operator, and he supported her and her two minor children for some years. In October, 1948, she obtained employment as house mother at an orphanage, but he continued to give her $15.00 or $20.00 a week until February 18, 1949, when he was fatally injured. During this whole period they lived together as man and wife. Although she used the name "Mrs. Kendall", she was generally known in the neighborhood as Mrs. Daniels. A married daughter of the claimant introduced Daniels as her step-father.

On the other hand, there was testimony that Daniels was known as a single man, and that he said on one occasion that Mrs. Kendall was "just taking care of the house for me."

Code, Article 101, section 35(7) sets up a schedule of benefits, in case of injury causing death, in favor of

"wholly dependent persons at the time of death," and in favor of "partly dependent persons". Prior to June 1, 1947, the statute provided that "The following persons shall be presumed to be wholly dependent for support upon a deceased employee: A wife or invalid husband * * *, a child or children under the age of sixteen years * * * living with or dependent upon the parent at the time of the injury or death.

"In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in death of such employee, but no person shall be considered as dependent unless such person be a father, mother, grandfather, grandmother, stepchild, or grandchild, or brother or sister of the deceased employee, including those otherwise specified in this section". Code 1939, art. 101, § 48(4).

By Chapter 895, Acts of 1947, the section was amended by substituting for the passage quoted the following: "In all cases, questions of dependency, in whole, or in part, shall be determined by the Commission in accordance with the facts in each particular case existent at the time of the injury resulting in death of such employee." The obvious effect of this amendment was to eliminate the presumption of total dependency in the case of a wife, invalid husband or child, and to eliminate the requirement that the claimant be related to the deceased employee, by blood or marriage, in one of the specified categories.

The appellees contend that the word "dependency" implies a legal or moral obligation to support, and since the deceased employee was under no such obligation to the claimant, she is not covered by the statute. They cite a passage from *Meyler v. Mayor and City Council of Baltimore*, 179 Md. 211, 215, 17 A. 2d 762, 764, where it was said: "In order to establish dependency, an applicant for compensation must show that there was reasonable ground to expect continuing support from the workman; that is to say, there must be not only an obliga-

tion to support, but also a reasonable probability that the obligation will be fulfilled. *State Industrial Accident Comm. v. Downton*, 135 Md. 412, 416, 109 A. 63, 65." See also, as to probability of continuing support, *Harvey v. George J. Roche & Sons*, 148 Md. 363, 370, 129 A. 359. In the *Meyler* case the question was whether a stepdaughter, who lived at home and took care of her invalid mother, was a dependent of her stepfather. He gave her $18.00 a week for the expenses of the household. It was held that she was not "merely a maid and nurse for her mother under a contract," and the evidence was legally sufficient to show that she was a dependent, citing *Mech v. Storrs*, 169 Md. 150, 179 A. 525, where a sister performed housework by arrangement with a brother. In each case the specified relationship gave rise to a moral (if not legal) obligation to support, and the fact that services were rendered did not defeat the claim of dependency. In the *Downton* case, it was held that the presumption of dependency arising from the specified relationship of husband and wife, which created a legal obligation to support, was rebuttable and not conclusive.

In the *Meyler* case the court also said, 179 Md. at page 215, 17 A. 2d at page 764: "A 'dependent' under the Workmen's Compensation Law may be generally defined as one who is relying wholly or in part upon a workman for the reasonable necessities of life at the time of the workman's accident. *Grant v. Kotwall*, 133 Md. 573, 577, 105 A. 758, 760." In the *Kotwall* case "dependent" was defined as "one who looks to another for support and maintenance; one who is in fact dependent—one who relies on another for the reasonable necessities of life." It was also said that "actual dependency is a pure question of fact." See also *States Engineering Co. v. Harris*, 157 Md. 487, 146 A. 392; *Larkin v. Smith*, 183 Md. 274, 280, 37 A. 2d 340; and *Bethlehem-Fairfield Shipyard v. Rosenthal*, 185 Md. 416, 421, 45 A. 2d 79. We find no support in any of these cases for the contention that a legal or moral obligation is implicit in the word "dependent". When the legislature eliminated the enum-

erated instances of relationship by blood or marriage to which recovery had been limited, we think it left as the only requirement a finding of fact that the claimant was subsisting, and would probably continue to subsist, in whole or in part upon the earnings of the workman at the time of the injury. Thus, for example, a person supported merely through charitable motives, without legal or moral obligation, would be eligible under the statute as amended. Cf. *Commonwealth ex rel. State Highway Comm. v. McGuire*, 188 Va. 444, 50 S. E. 2d 284.

The appellees rely strongly upon *Scott v. Independent Ice Co.*, 135 Md. 343, 346, 109 A. 117, 118. In that case it was held that a woman living with a workman as his wife, although not legally married to him, was not entitled to compensation, although she was "a member of the family of the employee and was dependent upon him for support." It was also held that his illegitimate children were not entitled to compensation. But in each instance the court clearly recognized that the claimants were in fact dependent. The decision was rested upon the premise that "common law" marriage is not recognized in Maryland, so that she could not bring herself within the category of "wife" and that the category of "children" did not include illegitimate children. The court said, 135 Md. at page 347, 109 A. at page 118: "the statute states who shall be entitled to compensation in specific terms, and the courts have no right to go beyond those terms".

It may be noted that neither the Commission nor the lower court in the instant case expressed any doubt that the claimant was in fact dependent. Commissioner Menchine said: "In spite of a finding of fact that this claimant regularly and substantially was supported by the decedent for a long period of time continuing to his death, the claim will be disallowed upon the ground that the public policy of the State forbids its grant". Judge France said: "I find that she was partially dependent on him at the time of her death." Unless this finding was clearly erroneous we are not at liberty to disturb it.

We think it was clearly supported by the testimony. Judge France affirmed the Commission's order on the sole ground that to allow it "would be contrary to the public policy of the state and place the stamp of approval on a 'common law marriage' which never has been recognized in the State of Maryland."

But we find nothing in the statute to disqualify a claimant who in fact relies upon a workman for support. The present claim does not rest upon any showing of relationship to the decedent legal or otherwise nor does recovery depend upon the enforcement of any contract. Cf *Maskell v. Hill*, 189 Md. 327, 332, 55 A. 2d 842, and *Lynch v. Rogers*, 177 Md. 478, 488, 10 A. 2d 619. In *Schmeizl v. Schmeizl*, 186 Md. 371, 376, 46 A. 2d 619, 621, it was contended that a widow, who deserted her husband and lived in adultery with another man, forfeited her right to inherit from her lawful husband. But we said: "The Maryland statute of distribution * * * prescribes positive and mandatory rules for the devolution of property, making nearness of relationship to the intestate, and not character or conduct, the controlling factor in determining the right to inherit. The court cannot adopt a public policy contrary to the plain provisions of the statute. The power to determine what is salutary for the people of the state resides in the Legislature. It is not the function of the court to determine whether the public policy which finds expression in legislation of this character is well or ill conceived. * * * As stated by this court on the previous appeal in this cause, if the policy of the statute is to be expanded, it must be done by the Legislature. It is not for the court to determine whether the morals of the people would be improved, or whether perjury would be increased, by making next of kin avengers of marital wrongs alleged to have been committed against the intestate. *Schmeizl v. Schmeizl*, 184 Md. 584, 42 A. 2d 106." Cf. *Gaudreau v. Eclipse Pioneer Division*, 137 N. J. L. 666, 61 A. 2d 227, 229; *Moore Dry Dock v. Pillsbury*, 9 Cir., 169 F. 2d 988, 990; and *Williams*

*v. American Mutual Liability Insurance Co.*, 72 Ga. App. 205, 33 S. E. 2d 451, 453.

The appellees contend that the weight of authority in other states denies benefits to persons in the position of the claimant here. Many of the cases cited, however, are distinguishable on account of marked differences in the statutory provisions. Thus, in *Taylor v. Ind. Acc. Comm.*, 131 Cal. App. 468, 21 P. 2d 619, recovery was denied on the ground that the claimant, who cohabited with the decedent although not married to him, had no reason to believe she was married and did not act in good faith. But the California Statute, Compensation Act, § 14, as amended by St. 1919, p. 917, in addition to the usual categorical classes contained a class "in good faith a member of the family or household of such employee", and the decision turned on the statutory requirement of good faith. In *Franklin Fluorspar Co. v. Bell*, 247 Ky. 507, 57 S. W. 2d 481, 483, the statute included a category of persons "living in the household of the employee", and the court seems to have read into this language a requirement of good faith. Cf. *Andrews v. Kopper Coal Co.*, 1942, 290 Ky. 278, 161 S. W. 2d 52. In *Armstrong v. Ind. Comm.*, 161 Wis. 530, 154 N. W. 844, 845, recovery was denied on the ground that the statute containing a category of "members of the family" comprehended only persons in a lawful status. To the same effect see *Schurler v. Ind. Comm.*, 86 Utah 284, 43 P. 2d 696; *Ind. Com. v. Dell*, 104 Ohio St. 389, 135 N. E. 669; and *Baldwin v. Sullivan*, 201 Iowa 955, 204 N. W. 420, where "dependent" was construed to include only those "lawfully dependent."

Some courts have gone so far as to hold, contrary to our decision in *Scott v. Independent Ice Co., supra,* that the terms "wife" or "legal wife" comprehend a "putative wife"—provided she was deceived as to her marital status or was otherwise blameless. *Eason v. Alexander Shipyards, Inc.*, La. App., 47 So. 2d 114; *Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276; *Perry v. Sun Coal Co.*, 183 Tenn. 141, 191 S. W. 2d 181. In at least

one state recovery was denied squarely on the ground of public policy. *Day v. Day,* 216 S. C. 324, 58 S. E. 2d 83. We agree, however, with the reasoning of the Supreme Court of Indiana in *Russell v. Johnson,* 220 Ind. 649, 46 N. E. 2d 219, 225, that public policy is a matter for the legislature and the courts cannot properly read into the statute a disqualification on moral grounds. The authority of that case is not shaken by the fact that the legislature subsequently amended the law so as to limit recovery to cases where the claimant had cohabited with the decedent for more than five years. *Guevara v. Inland Steel Co.,* Ind. App., 88 N. E. 2d 398, 400, 404. In that case it was well said: "Underlying the Workmen's Compensation Act is the principle that the economic loss arising when an employee sustains an accidental injury arising out of and in the course of his employment and from which he dies, ought to be borne by the industry involved and the consumers of its products rather than by the employee's dependents or society at large." Judge Draper, concurring, said: "The Workmen's Compensation Act is not a code of morals, but is a practical device for the economic protection of employees and those dedendent upon them."

*Judgment reversed, with costs.*

MARKELL, J., delivered the following dissenting opinion.

If the legislature includes among beneficiaries under a workmen's compensation law a paramour or mistress, *eo nomine* or by any of the innumerable synonyms or euphemisms for that term, or by the word "dependent" in its broadest sense, as covering receipt of support in any relationship in life, lawful or unlawful, the courts cannot invalidate such legislation by declaring it to be against public policy. When the legislature has spoken, public policy is what the legislature says. Nor can the courts exclude from the benefits of a statute, because of personal misconduct, anyone whom the legislature has included. The workmen's compensation law excludes

from benefits only employees or dependents when injury or death is caused by self-inflicted injury, wilful misconduct or solely by intoxication of the employee. Code 1947 Supp., Art. 101, sec. 45. In the first *Schmeizl* case [184 Md. 584, 42 A. 2d 113] we said, "Under the Statute of 13 Edward I, Chapter 34 (if in force in Maryland) a wife by elopement and adultery forfeits dower, 2 *Blackstone's Commentaries* 130; *Poe on Pleading*, § 277. Under the Act of 1809, Ch. 138, Sec. 7 (Code, 1939, Art. 27, Sec. 19), both dower and a wife's distributive share of personal estate are forfeited on conviction of bigamy. If the 'public policy' of these statutes is to be expanded, this must be done by the Legislature. Whether morals would be improved, or perjury increased, by making next of kin avengers of a decedent's marital wrongs, is not for the court to determine."

These truisms lead nowhere toward the decision of the instant case. As a ground of decision, they beg the question. The legislature has not so included, as a beneficiary, a paramour or a party to any illicit relationship, however common or uncommon. This court has never construed the act as including any such person. The question before us is one of statutory construction. The legislature has said that the act shall be so construed as to effectuate its general purpose. Its general purpose has not been declared by the legislature or held by this court to include endowment of illicit relationships. It is reasonable to suppose (when a statute is susceptible of such a construction) that the legislative intent was not contrary to the settled public policy of centuries. In this sense "public policy" is a factor in statutory construction. *Gritta's Case,* 236 Mass. 204, 207, 127 N. E. 889.

In the statute, not only since 1947, but from the beginning since 1914, the only *inclusive* statement of beneficiaries is the single word "dependent", paraphrased by the expressions "families and dependents" in the preamble to the Act of 1914, ch. 800, and "family or dependents" at the beginning of the present section 35. The

act "does not define the term 'dependent' ", but it has been defined by this court and other courts in many cases, briefly stated in 36 pages (plus 11 pages of the latest pocket supplement) of "Words and Phrases". *Meyler v. Mayor & City Council,* 179 Md. 211, 215, 17 A. 2d 762. Nowhere except in Indiana has the word been construed as covering a relationship known to be illicit and nowhere has it been given as broad a meaning as its ordinary meaning. The Oxford Dictionary defines "dependent" as "a person who depends on another for support, position, etc.; a retainer, attendant, subordinate, servant." The Century Dictionary defines it as "One who depends on or looks to another for support or favor; a retainer; as, the prince was followed by a numerous train of *dependents,"* and cites, from Fletcher, "I am an heir, sweet lady, However I appear a poor *dependent,"* and from Addison (referring to Sir Roger de Coverley's "chaplain"), "He lives in the family rather as a relation than a *dependent."* In *Grant v. Kotwall,* 133 Md. 573, 575-578, 105 A. 758, and in *Meyler v. Mayor & City Council, supra,* 179 Md. 214-219, 17 A. 2d 762, this court reviewed the facts and authorities at length to show that a mother and a stepdaughter respectively (both within the *exclusive* statement of beneficiaries before 1947) were not servants, but were "dependents" in this court's narrowed definition of the term. In *Scott v. Independent Ice Co.,* 135 Md. 343, 346-347, 109 A. 117, it was held that "family", if given the broad meaning which includes servants—and a mistress "living in"— could not expand the *exclusive* statement of dependents as limited to specified classes of relations. In the *Grant* and *Meyler* cases the claimants were expressly within the *exclusive* classes, but the inclusive statement was construed as *not* including servants and was given a meaning much narrower than the ordinary meaning of "dependent." Except in Indiana, the courts have found no more difficulty in construing "dependent" as not including illicit relationships than as not including servants.

Since June 1, 1947 section 35 of the act provides, "In all cases, questions of dependency, in whole or in part shall be determined by the Commission in accordance with the facts in each particular case existent at the time of the injury resulting in death of such employee." Before the Act of 1947, ch. 895, this provision was limited to "all other cases" and was preceded by (1) a presumption (rebuttable), viz., that certain persons, a wife or invalid husband and in stated circumstances children, "shall be presumed to be wholly dependent for support upon a deceased employee" and followed by (3) an *exclusive* statement of beneficiaries, viz., "but no person shall be considered as dependent unless such person be a father, mother, grandfather, grandmother, stepchild or grandchild, or brother or sister * * * including those otherwise specified [wife, husband, child] in this Section." By the Act of 1947 clauses (1) and (3) were repealed, leaving unchanged the original *inclusive* statement of beneficiaries, viz., the undefined word "dependent". For present purposes, the repeal of the rebuttable presumption has no significance. The repeal of clause (3) adequately explains itself. It leaves the question of dependency to the facts of each case, instead of arbitrarily including a mother, sister or stepchild and excluding an aunt, a niece, a mother-in-law, and many similar relations or persons not related by blood or marriage.

Repeal of the *exclusive* clause furnishes no reason for looking beyond the removal of this arbitrary barrier and expanding the only *inclusive* word, "dependent," to include a knowing partner in an illicit relationship, which it has never (except in Indiana) been construed to include. In Maryland when the legislature had the question brought directly to its attention, it did not include a mistress. In *Scott v. Independent Ice Company*, 1919, 135 Md. 343, 109 A. 117, this court held that, because of the exclusive clause, neither a mistress nor an illegiti-

mate child could be a "dependent". By Chapter 456 of the Acts of 1920, the legislature promptly amended the definition of "child" in section 67, Code (1947 Supp.), so as to include an illegitimate child within the exclusive clause in section 35. Neither then nor since has the legislature taken any similar action to include a mistress as a dependent.

In the instant case the mistress is the only claimant. As between her and the insurer, her plight naturally may evoke sympathy. But the same question would arise between mistress and wife or children or both. If the mistress is wholly dependent, she would take to the exclusion of partially dependent wife and children. If a "kept woman" may be a "dependent", so may a kept man, in either case whether kept by a man or by a woman. The more abject the illicit relationship, the more likely the "dependent" partner is to be wholly dependent.

A workmen's compensation law is, indeed, not a code of morals. But we are not at liberty to ascribe to the legislature an intent to upset fundamentals still recognized by law and society (however often transgressed by individuals), in order to take the children's bread and cast it to the dogs.

The question presented involves no question of fact to be relegated to the commission. No more reasonable than upsetting established standards would be establishment of a new moral system by which in each case this court or the commission would make an appraisal (necessarily arbitrary) of "social values" in each illicit relationship.

I think the judgment should be affirmed.